STATE OF NORTH CAROLINA v. RONALD TYREE FRONEBERGER

No. 8126SC53

(Filed 15 December 1981)

**1. Kidnapping § 1— indictment—proper in form**

The fact that the indictment charging the defendant with kidnapping failed to allege the element of lack of consent, the age of the victim, and failed to correctly spell the name of the defendant did not make it fatally defective. G.S. 14-39 and G.S. 15A-1446(d)(4).

**2. Kidnapping § 1.1— evidence of murder—relevant to kidnapping**

It was not error to admit evidence pertaining to the murder of a person whom defendant was to have aided in kidnapping as the State had the burden under G.S. 14-39 of proving that the victim was unlawfully confined, restrained or removed for the purpose of committing murder.

**3. Criminal Law § 87.1— leading questions—date of crime**

One of the guidelines which have developed which aid trial judges in determining when counsel shall be allowed to lead witnesses allows leading questions in order to direct attention to the subject matter at hand without suggesting answers. Therefore, the trial court did not err in permitting the district attorney to ask one of the State's witnesses to call his attention to the date of 13 July 1979 and asked him if he saw the victim that day and to relate what happened.

**4. Criminal Law § 162.3— nonresponsive answer—failure to move to strike**

When a defendant objects to an alleged improper response to a proper question, he must also move to strike said response. Defendant's failure to so move precludes him from raising the questions of admissibility on appeal.

**5. Kidnapping § 1.1— relevancy of evidence after stipulation**

In a prosecution for kidnapping for the purpose of facilitating murder, it was not error for the court to admit evidence that on the date the victim's body was found a receipt and bag from a restaurant were found at the scene even though it was stipulated that the body found was the body of the victim. The State's evidence tended to show that defendant and two other persons drove away from the same restaurant in a Cadillac on the morning of the kidnapping, and the bag and receipt from the restaurant were relevant in providing proof of the charge.

**6. Criminal Law § 162— failure to object—waiver of right**

Where the record on appeal reveals that no objection was made during the trial to certain questions which elicited testimony assigned as error, the testimony, even if incompetent, is not a proper basis for appeal.

**7. Criminal Law § 126— request to poll jury—failure to make request prior to jury's discharge**

Where the trial court read the jury's verdict, inquired whether or not that was actually their verdict, and the jury responded in the affirmative before

the trial court discharged the jury and recessed for lunch, a motion by defense counsel to poll the jury after the recess was not timely under G.S. 15A-1238 as defense counsel waived his right to request a polling of the jury by not making his request prior to the jury's discharge.

8. **Criminal Law § 126.3— failure to allow juror to impeach her verdict—no error**

The trial court did not err in failing to allow a juror, who called defense counsel's secretary indicating that she did not feel that the defendant was guilty and that three of the jurors had been "coerced" into their decision by the other jurors, to impeach her verdict as neither G.S. 15A-1240(c)(1) nor (2) mandates that the court was required to hear the juror's testimony, and as the testimony of the defense counsel's secretary was both incompetent and vague and was not sufficient to allow the alleged juror or any other juror to impeach his or her verdict.

APPEAL by defendant from *Thornburg, Judge.* Judgment entered 7 August 1980 in Superior Court, MECKLENBURG County.

This matter was initially heard in the Court of Appeals 6 May 1981. In an opinion filed on 18 August 1981 we reversed the judgment against defendant because of a fatal defect appearing on the face of the indictment. On 3 November 1981 the North Carolina Supreme Court ordered that the opinion be vacated and that the case be remanded to this Court for consideration of all assignments of error brought forward by defendant. Pursuant to this order, the case is once again before us.

Defendant was indicted for the kidnapping of Ethell Wilson for the purpose of facilitating the felony of murder. He was found guilty as charged and sentenced to a term of imprisonment of not less nor more than 25 years. From this sentence, defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General W. A. Raney, Jr., and Assistant Attorney General G. Criston Windham, for the State.*

*Public Defender Fritz Y. Mercer, by Assistant Public Defender Cherie Cox, for defendant appellant.*

MARTIN (Robert M.), Judge.

[1] Defendant has preserved ten of his fourteen assignments of error on appeal. He first assigns error to the bill of indictment alleging that it was fatally defective for failure to allege the elements of lack of consent, the age of the victim and the correct

name of the defendant. Defendant's motion in arrest of judgment was made after the verdict was entered and appears to have been based solely upon the misspelling of defendant's name in the bill of indictment. We note, however, that pursuant to G.S. 15A-1446(d)(4), failure of an indictment to state the essential elements of an alleged violation may be raised for the first time on appeal. The bill of indictment in question reads:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 13 day of July, 1979, in Mecklenburg County, Ronald Tyree Fronberger (sic), did unlawfully, wilfully and feloniously confine, restrain, and remove another person, Ethell Wilson, for the purpose of facilitating the commission of the felony of murder in teh (sic) first degree, adn (sic) said Ethell Wilson was killed as a result of said kidnapping, in violation of G.S. 14-39.

G.S. 14-39, in pertinent part provides:

> *Kidnapping.*—(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . .
>
> (2) Facilitating the commission of any felony . . ..

We agree with the State that neither the slight misspelling of defendant's name nor the failure to allege the age of the victim makes the indictment defective. Our Supreme Court has held that the victim's age is not an essential element of kidnapping. The Court noted that age is merely a factor relating to the State's burden of proof in regard to consent. *State v. Hunter,* 299 N.C. 29, 261 S.E. 2d 189 (1980). In light of a recent decision handed down by the Supreme Court, the failure to allege lack of consent of the victim is also not fatal. *State v. Sturdivant,* filed 3 November 1981. The Court emphasized, "By its very nature, the crime of kidnapping cannot be committed if one consents to the act in a legally valid manner." For the aforesaid reasons we find the bill of indictment to be proper in form.

[2]  Prior to trial defense counsel filed a motion *in limine* requesting the trial court to prohibit the State from producing evidence that the alleged kidnapped victim, Ethell Wilson, was subsequently found deceased. He alleged that the State was cognizant of the fact that defendant did not participate in the actual murder of Wilson. The trial court denied the motion and informed defense counsel, "I will just have to rule on the evidence as it comes along as to the extent to which I will let the State proceed." Defendant assigns error to the denial of this motion and argues that the subsequent admission of evidence pertaining to the murder and the decomposed condition of Wilson's body, which was found 39 days after the kidnapping, was prejudicial. We find no error in the denial of defendant's motion. "One of the essential elements of kidnapping under G.S. 14-39 is that the confinement, restraint, or removal be for the purpose of, among other alternatives, 'facilitating the commission of any felony.'" *State v. Williams*, 295 N.C. 655, 659, 249 S.E. 2d 709, 713 (1978). In the case *sub judice*, the State had the burden of proving that Wilson was unlawfully confined, restrained or removed for the *purpose* of committing murder. To convict defendant of kidnapping, the State did not have to prove the actual commission of the murder. In his argument supporting the motion *in limine*, defendant merely alleged that "if any evidence relative to the subsequent murder of the victim of the kidnapping is brought out at this trial, it will do nothing other than inflame the jury." On the basis of this argument we do not feel that the trial court abused its discretion in denying defendant's motion. We further note that at trial the State presented testimony from the Mecklenburg County Medical Examiner and an investigator from his office that Wilson's decomposed and bullet-riddled body was found in the trunk of a Cadillac in Mecklenburg County on 21 August 1979. Defendant failed to object to any of this evidence and, in effect, waived any assignment of error as to the prejudicial effect of the denial of his motion *in limine*.

We note that defendant did object to the following question posed to a witness who was at the scene when the body was found: "And whether or not the body was decomposed(?)" We also note that the trial court sustained this objection. Defendant's allegation that this leading question by the district attorney was prejudicial is, therefore, groundless.

Defendant has abandoned Assignments of Error Nos. 3, 4 and 5.

[3]   In Assignment of Error No. 6, defendant argues that the trial court committed prejudicial error by allowing the district attorney to lead a State's witness as to the alleged date of the crime. The district attorney specifically called James Pearson's attention to the date of 13 July 1979 and asked him if he saw the victim that day and to relate what happened. The prevailing rule gives the trial judge discretionary power to determine whether or not counsel shall be permitted to ask leading questions. This power will not be disturbed on appeal absent an abuse of discretion. Furthermore certain guidelines have developed which aid trial judges in determining when counsel shall be allowed to lead his witnesses. One of these guidelines allows leading questions in order to direct attention to the subject matter at hand without suggesting answers. *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). The question at issue comes under this guideline. We finally note that no prejudicial error could have been caused by this leading question in light of defendant's later testimony that the kidnapping occurred on 13 July 1979.

[4]   Defendant also assigns error to an alleged non-responsive answer given by Pearson. During direct examination by the State, Pearson indicated that on the day of the alleged crime, Charles Norwood and Wilson drove to Pearson's house in a green Cadillac. Pearson observed that Norwood was pointing a pistol at Wilson's head. Defendant was standing in Pearson's yard at the time. Pearson testified that when he started to enter his house to call the police, defendant "barred" him. The State continued to question Pearson as follows:

Q. How did he bar you from the door?

A. Well, you know, barred me. Well, he had his gun on his side, you understand, I started to go into my house.

MR. REYNOLDS: OBJECTION AS NOT RESPONSIVE TO THE QUESTION.

COURT: OVERRULED.

A. I started to go into the house. He said, "Where are you going?" I took the second thought, that he was going to

do something to me, and I said, "Nowhere." I backed up. That was to keep from getting hurt myself.

Defendant now argues that Pearson's answer should have been stricken because it constituted both a non-responsive answer and opinion testimony. The record on appeal indicates that defendant failed to move to strike Pearson's testimony. When a defendant objects to an alleged improper response to a proper question, he must also move to strike said response. Defendant's failure to so move precludes him from raising the question of admissibility on appeal. *State v. Cunningham*, 34 N.C. App. 442, 238 S.E. 2d 645 (1977).

[5] In Assignment of Error No. 9 defendant argues that two exhibits were erroneously admitted into evidence, because their sole effect was to inflame the jury. A State's witness testified that on the date Wilson's body was found in the green Cadillac, a receipt and bag from a Kentucky Fried Chicken Restaurant were found at the scene. The parties had previously stipulated "that the body found in the trunk of a Cadillac off Youngblood Road in South Mecklenburg County on August 21, 1979, was the body of Ethel (sic) Wilson." Defendant argues that because of this stipulation the evidence of the bag and receipt was irrelevant. We disagree. The State's evidence tended to show that defendant, Norwood and Wilson drove away from a Kentucky Fried Chicken Restaurant in a green Cadillac on the morning of the kidnapping. The bag and receipt from Kentucky Fried Chicken which was later found near the Cadillac containing Wilson's body was clearly relevant in providing proof of the charge against the defendant that he kidnapped Wilson for the purpose of murder. This is particularly true in light of the time which passed from the date of the kidnapping to the date Wilson's body was discovered. "Strictly speaking, evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." 1 Stansbury's N.C. Evidence § 77 (Brandis rev. 1973). Finally we note that defendant has failed to show any prejudicial effect from the admission of these exhibits.

[6] In Assignments of Error Nos. 10 and 11, defendant has noted error in the testimony of the Mecklenburg County Medical Examiner and an investigator from his office involving the condition and identity of the body removed from the Cadillac. The record

on appeal reveals that no objection was made during the trial to any of the questions eliciting this testimony or the testimony itself.

> "It is well settled that with the exception of evidence precluded by statute in furtherance of public policy [which exception does not apply to this case], the failure to object to the introduction of the evidence is a waiver of the right to do so, and its admission, even if incompetent is not a proper basis for appeal." (Citations omitted.)

*State v. Hunter*, 297 N.C. 272, 278-79, 254 S.E. 2d 521, 525 (1979).

[7] After the jury found defendant guilty of kidnapping and recommended leniency, the trial court read this verdict to the jury and inquired whether or not that was actually their verdict. The jury responded in the affirmative. The trial court then discharged the jury and recessed for lunch. When court resumed, defense counsel informed the court that he had motions to make. The trial court agreed to hear them and the following ensued:

> MR. REYNOLDS: Yes, sir. For the record, I would move to poll the jury as things occurred very rapidly before lunch, and just before lunch, I did not myself have the opportunity to think of polling them at that time. I was in a state of shock.

> COURT: You are not suggesting that the Court in any way prevented you from doing that?

> MR. REYNOLDS: No sir. No, sir. I'm saying that if there was any reason for it, it was my state of mind at the time the verdict was reached.

> COURT: Show that the jury having been discharged at 12:30 and the request for poll coming at 2:20, having previously been made in chambers after the jury had been excused by the Court, had left not only the jury box but the courtroom, the motion to recall the jury and take a jury poll is denied. The defendant excepts.

Defendant has assigned error noting that the "court's failure to allow the jury to be polled constituted error prejudicial to the defendant's right to a fair and impartial trial, and a denial of his right to confront the witnesses against him." G.S. 15A-1238 re-

quires that the jury must be polled when a party so moves "after a verdict has been returned and before the jury has dispersed." Defense counsel waived his right to request a polling of the jury by not making his request prior to the jury's discharge. *See State v. Littlejohn,* 19 N.C. App. 73, 198 S.E. 2d 11, *cert. denied,* 284 N.C. 123, 199 S.E. 2d 661 (1973). This assignment of error is without merit and is overruled.

[8] Immediately following the trial court's denial of defense counsel's belated motion to poll the jury, defense counsel moved "to set aside the verdict as against the greater weight of the evidence or motion notwithstanding the verdict of the jury." He then requested the court to hear testimony from his secretary, Mrs. Betty Fuller, regarding members of the jury. Mrs. Fuller testified that a woman identifying herself as Cheryl Oberndorf called defense counsel's law office at 2:00 p.m. indicating she was one of the jurors in defendant's case. Mrs. Fuller continued:

> She was upset and crying and said that she did not want to cause trouble but that three of them were very, very upset and crying and that she did not feel that the defendant was guilty and that they had been "coerced" into their decision by the other jurors.

The trial court made the following response to this testimony:

> Let the record reflect that the Court refuses to permit this juror to be brought before the Court for the purpose of impeaching her verdict in the case. That the verdict was taken in open court. That all jurors, including this juror, were asked if this was their verdict. So say they all. That they all nodded affirmatively or said, "Yes." That the juror and any other juror had ample opportunity to state to the Court that this was not their verdict but they did not do so. That the verdict is in writing. It is signed by the Foreman of the Jury. That the verdict is consistent, precise, and that the second thoughts of this juror as to her own part in reaching a unanimous verdict are not sufficient grounds to justify an inquiry by the Court as to the manner and deliberative process through which the verdict was reached. That the jury, in addition to finding the defendant guilty of kidnapping, recommended leniency, which is not an unusual practice on the part of jurors, and that the verdict being otherwise consistent

with the law, evidence, and instructions in the case, will not now be disturbed by way of attack by members of the jury. The defendant excepts.

Defendant now argues that the trial court committed prejudicial error when it refused to hear the testimony of any alleged impropriety in regard to the jury's deliberation and verdict. He further argues that the court violated subsection (c) of G.S. 15A-1240. This statute, which became effective 1 July 1978, provides:

Impeachment of the verdict.—(a) Upon an inquiry into the validity of a verdict, no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

(b) The limitations in subsection (a) do not bar evidence concerning whether the verdict was reached by lot.

(c) After the jury has dispersed, the testimony of a juror may be received to impeach the verdict of the jury on which he served, subject to the limitations in subsection (a), only when it concerns:

(1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him; or

(2) Bribery, intimidation, or attempted bribery or intimidation of a juror.

We find no merit to defendant's argument that the court was required to hear the juror's testimony as mandated by either G.S. 15A-1240(c)(1) or (2). In a recent decision this Court emphasized: "The determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal. (Citations omitted.)" *State v. Gilbert*, 47 N.C. App. 316, 319, 267 S.E. 2d 378, 379 (1980). In the case *sub judice*, the testimony of defense counsel's secretary was both incompetent and vague. She referred to a telephone conversation from an alleged juror who indicated that she and two other unnamed jurors had been "coerced" into the verdict rendered. The caller gave no basis for this conclusion. In light of the written verdict

which had been signed by the foreman of the jury, the court's query to the jury as to whether this was actually their verdict and the jury's affirmative response to this query; the court did not err in refusing to permit the alleged juror to impeach her verdict. Prior to the enactment of G.S. 15A-1240, jurors were not allowed to attack or overthrow their verdict after they had been discharged. *See Selph v. Selph*, 267 N.C. 635, 148 S.E. 2d 574 (1966); *State v. Hollingsworth*, 263 N.C. 158, 139 S.E. 2d 235 (1964); *In re Will of Hall*, 252 N.C. 70, 113 S.E. 2d 1 (1960). The case law also indicated that one other than a juror could not testify as to what that juror had said. *Lambert v. Caronna*, 206 N.C. 616, 175 S.E. 303 (1934); *Baker v. Winslow*, 184 N.C. 1, 113 S.E. 570 (1922). In the recent decision of *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed. 2d 796, 100 S.Ct. 2165 (1980), our Supreme Court indicated that it was of the opinion that G.S. 15A-1240(a) "amounts to legislative recognition of the existing case law." *Id.* at 102, 257 S.E. 2d at 561. It appears that subsection (c) of G.S. 15A-1240 is in derogation of the common law. The statute, therefore, must be strictly construed. *Ellington v. Bradford*, 242 N.C. 159, 86 S.E. 2d 925 (1955). We hold that the vague hearsay evidence given by defense counsel's secretary, concerning "second thoughts" of a juror, was not sufficient to allow the alleged juror or any other juror to impeach his or her verdict.

Defendant received a fair trial free from prejudicial error.

No error.

Judges CLARK and HILL concur.