STATE OF NORTH CAROLINA v. LORETTA JANE BAYNARD

No. 8527SC860

(Filed 4 March 1986)

1. **Narcotics § 2— obtaining narcotics by forged prescription—indictment sufficient**

   Indictments for obtaining and attempting to obtain a controlled substance by fraud and forgery were sufficient even without specific allegations that defendant presented the forged prescriptions with knowledge that they were forged where both indictments alleged that the offense was done intentionally and contained the words "misrepresentation, fraud, deception, and subterfuge," implying that the person committing the acts knew the prescriptions were forged and had the specific intent to deceive. N.C.G.S. 90-108(a)(10); N.C. G.S. 14-120.

2. **Criminal Law § 126— request to poll jury denied—no error**

   The trial court did not err by failing to grant defendant's request to poll the jury where defendant's motion was made after the jury dispersed; defendant let pass an opportunity to request a polling when there was a delay as the clerk delivered the verdict sheets to the judge; and the judge on his own initiative conducted an informal poll by asking that the jurors who voted guilty on each offense to raise their hands. N.C.G.S. 15A-1238.

3. **Criminal Law § 138.15— obtaining narcotics by forged prescription—seriousness of offense—not considered as aggravating factor**

   The trial court did not improperly consider the seriousness of the offense as an aggravating factor when sentencing defendant for obtaining and attempting to obtain a controlled substance by fraud and forgery where the judge commented that he would not consider evidence of the street value and street use of the drugs as an aggravating factor but would consider it in determining the seriousness of the crime and as to whether to impose the presumptive sentence. The isolated comment and the fact that the evidence was received do not necessarily lead to the conclusion that the trial judge improperly considered the seriousness of the crime as an aggravating factor; no such finding appears in the record; and the judge specifically stated that he did not consider the evidence to constitute an aggravating circumstance.

**4. Criminal Law § 138.23— attempting to obtain narcotics by forged prescription —armed accomplices aggravating factor—evidence not sufficient**

A new sentencing hearing was required for a conviction for attempting to obtain a controlled substance by fraud and forgery where the trial judge found in aggravation that defendant knew that a person accompanying her was armed and that the shooting of a deputy was committed to aid defendant in escaping. There was no evidence that defendant knew that her companion was armed or intended to use the weapon, and there was evidence that showed that defendant never posed any threat to the police and was generally a person of good character without a criminal record.

APPEAL by defendant from *Stephens, Judge*. Judgment entered 24 April 1985 in Superior Court, CLEVELAND County. Heard in the Court of Appeals 12 December 1985.

Defendant was charged with obtaining a controlled substance by fraud and forgery and attempting to obtain a controlled substance by fraud and forgery. After the jury returned a verdict of guilty, defendant was sentenced to the presumptive term of two years for the conviction on the completed offense and to the maximum term of five years for the attempt conviction. The terms were set to run consecutively.

The evidence presented at trial showed the following essential facts. On 6 January 1985, defendant walked into a Revco drugstore in Shelby and presented the pharmacist with a prescription to be filled. The prescription was for Carbrital, a Schedule III controlled substance, made out to a Vernon Epley and signed by Dr. Archie McIntosh of Marion. The pharmacist filled the prescription; defendant paid for the drugs and left. Less than one hour later, a white male entered the store and presented the pharmacist with a prescription to be filled from the same doctor in Marion. The patient's name on this prescription was George Mace and the drug was Dilaudid, a Schedule II controlled substance. The pharmacist informed the man that that particular store did not stock Dilaudid and the man left. The pharmacist, now suspicious that the prescriptions were forged, called the police and informed them of the incidents.

Later that afternoon, at another Revco drugstore across town, defendant presented a prescription for Dilaudid which was made out for George Mace by Dr. McIntosh. The pharmacist, aware of the earlier incident at the other store, called the police and "stalled." There was a male accompanying defendant who

matched the description of the man who had presented the same prescription at the other store. Evidently made suspicious by the long wait, the man and the defendant left just as the police were arriving. Deputy Eddie Barkley of the Cleveland County Sheriff's Department was the first to arrive, and the pharmacist signalled him that the defendant had just left. The deputy went back outside, saw the defendant and her companion walking toward a white Mustang and shouted for them to stop. Instead, the pair ran to the car and got in, the male pulling a gun from his jacket. The deputy pulled his gun and ordered the two out of the car. Both got out but the male reached back in for the gun. Shots were exchanged and the male suspect, who was defendant's husband, was killed and the deputy was wounded.

Dr. McIntosh testified that defendant was a patient of his in Marion and that the last time she had been in his office for a check-up, he had been forced to leave her alone in the office when he was called to the hospital emergency room to treat an accident victim. He also testified that he had no patient by the name Vernon Epley or George Mace and that he had not signed the prescription forms nor authorized anyone to sign them for him. Defendant presented no evidence. The jury convicted defendant of both counts and she appeals.

*Attorney General Lacy H. Thornburg by Assistant Attorney General W. F. Briley for the State.*

*Acting Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Louis D. Bilionis for defendant-appellant.*

PARKER, Judge.

[1] Defendant first assigns as error the form of the indictments in these cases, alleging that they were insufficient to charge the crimes of obtaining and attempting to obtain a controlled substance by fraud and forgery. The indictments read, in essential part, as follows: "that . . . defendant . . . unlawfully, willfully and feloniously did intentionally acquire (and attempt to acquire) a controlled substance . . . by misrepresentation, fraud, deception and subterfuge in that [she] presented a prescription which was . . . a false or forged prescription." Defendant contends this in-

dictment is insufficient because it fails to allege that defendant presented the prescription with knowledge that it was forged.

An indictment in this State must allege all the essential elements of the offense with sufficient clarity to (i) identify the offense, (ii) protect the accused from being twice put in jeopardy for the same offense, (iii) enable the accused to prepare for trial, and (iv) support judgment upon conviction. *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970). Knowledge that the prescription is false or forged is an essential element of the offense under G.S. 90-108(a)(10). *State v. Church*, 73 N.C. App. 645, 327 S.E. 2d 33 (1985).

Even though the indictments do not specifically state that defendant presented the forged prescriptions with knowledge that they were forged, the language of the indictments is sufficient to meet the requirements of *Sparrow, supra*. First, both indictments allege that the offense was done "intentionally." This allegation implies that the defendant knew the prescriptions were forged when she attempted to have them filled. Second, the indictments contained the words "misrepresentation, fraud, deception and subterfuge," all of which imply that the person committing the acts had the specific intent to misrepresent, deceive, etc. *See Church* at 646, 327 S.E. 2d at 34.

Also noteworthy is that two previous decisions of this Court have upheld indictments under this statute which followed the same language. *See State v. Fleming*, 52 N.C. App. 563, 279 S.E. 2d 29 (1981); *State v. Booze*, 29 N.C. App. 397, 224 S.E. 2d 298 (1976). While neither case addressed the specific question of the need to allege knowledge of the falsity of the prescription, both cases involved similar indictments which were upheld against challenge.

Defendant argues by analogy to the forgery and uttering statute, G.S. 14-120. To support a conviction for a violation of that statute, the indictment must allege that the defendant actually knew of the falsity of the instrument. *State v. Daye*, 23 N.C. App. 267, 208 S.E. 2d 891 (1974). However, G.S. 14-120 is distinguishable from G.S. 90-108(a)(10), the statute at issue here. General Statute 14-120 specifically states that the person violates the statute if he publishes or utters a forged instrument "knowing the same to be falsely forged or counterfeited." No such language appears in G.S.

90-108(a)(10). Because the indictment alleged that the offense was done "intentionally" and because the terms used in the indictment imply a specific intent to deceive, we hold that an indictment charging an offense under G.S. 90-108(a)(10) need not specifically allege that the defendant presented the false prescription knowing it was false. This assignment of error is overruled.

[2] Defendant next assigns as error the failure of the trial judge to poll the jury after a request by the defendant. General Statute 15A-1238 gives any party the right to have the jury polled after a verdict is returned but "before the jury has dispersed." The defendant's motion in this case was made after the jury had dispersed and, therefore, her right to have the jury polled is deemed waived. *State v. Froneberger*, 55 N.C. App. 148, 285 S.E. 2d 119 (1981), *appeal dismissed and cert. denied*, 305 N.C. 397, 290 S.E. 2d 367 (1982). Defendant contends, however, that the trial judge did not give her the opportunity to request a polling by dismissing the jury without allowing time for motions or requests.

The transcript shows that the clerk read the verdicts and asked the jurors collectively if the verdict was unanimous. All appeared to respond in the affirmative. Then, there was a delay as the clerk delivered the verdict sheets up to the judge. The opportunity to request a polling was then presented. However, defendant let the opportunity pass and the trial judge, on his own initiative, conducted an informal poll by asking, for each charge, that the jurors who voted guilty to raise their right hands. All the jurors did so. The jury was then dismissed. Defendant argues that the polling and comments by the trial judge precluded her opportunity to request a formal poll. We do not agree as the time to request a poll had been available earlier and, in any event, in light of the trial judge's own informal poll, any error was harmless beyond a reasonable doubt.

[3] Defendant next assigns as error that the trial judge improperly considered the seriousness of the offense as an aggravating factor in sentencing her. It is assumed that the legislature took such factors as the seriousness of the offense and the need to deter others into consideration when setting the presumptive term and they are not proper factors for aggravation of a sentence. *State v. Blackwelder*, 309 N.C. 410, 306 S.E. 2d 783 (1983). The record shows that the trial judge did not find that the

seriousness of the crime aggravated defendant's sentence. Instead, defendant argues that evidence admitted and comments made by the trial judge during the sentencing hearing indicates that he did consider the seriousness of the crime to be an aggravating factor, regardless of whether he formally found such to be in rendering judgment. The evidence challenged by defendant was the testimony of a Shelby police officer concerning the street value and "street use" of the drugs defendant bought and attempted to buy. In response to defendant's objection to this testimony, Judge Stephens replied:

> I understand that and I will not consider that as an aggravating circumstance. I do not consider that as an aggravating circumstance.

> However, it is some evidence as it relates to a possible motive in commission of this type of crime and the seriousness of this type of crime—the type of drugs that are the subject of this crime—and, therefore, I will consider that in determining the seriousness of the crime, how I evaluate that as to whether or not to impose the presumptive sentence, and for that purpose only.

Defendant contends that these comments show Judge Stephens' belief that the seriousness of defendant's crime would be an aggravating factor to consider in imposing greater than the presumptive sentence. This isolated comment and the fact that the evidence was received do not necessarily lead to the conclusion that the trial judge improperly considered the seriousness of the crime as an aggravating factor. In fact, no such finding appears in the record and, in the quoted statement above, the judge specifically stated that he did not consider the evidence to constitute an aggravating circumstance. This assignment of error is overruled.

[4] However, we do believe that a new sentencing hearing is required in 85CRS66, in which the trial judge used a non-statutory aggravating circumstance to elevate the sentence to the maximum of five years. The trial judge found in aggravation:

> That the defendant acted with and was aided by a white male person in the commission of this crime; that such white male person was present during the prepetration [sic] of this

crime; that this white male person was armed with a pistol and that he shot a police officer with that pistol when the officer attempted to question the defendant at the scene of this crime and attempted to prevent the defendant from escaping; that the defendant knew that this white male person aiding her was armed with a deadly weapon and that this shooting was committed to aid the defendant in escaping after the commission of this crime.

This relates to the gun battle between Deputy Barkley and the "white male person," who was defendant's husband, which occurred outside the Revco where defendant had attempted to buy Dilaudid. Defendant's husband was killed and the deputy was wounded. However, there was no evidence presented that the defendant knew her husband was armed or that he intended to use a weapon. In fact, the evidence showed defendant never posed any threat to the police and that she was generally a person of good character and had no criminal record.

In order to be valid, an aggravating factor must be supported by evidence sufficient to allow a reasonable judge to find its existence by a preponderance of the evidence. *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983). As no evidence was presented which tended to show defendant knew her accomplice was armed, the non-statutory aggravating factor as found by the trial judge was improper and a new sentencing hearing is required.

No. 85CRS169—No error.

No. 85CRS66—New sentencing hearing.

Judges WHICHARD and BECTON concur.