STATE OF NORTH CAROLINA v. JAMES EDWARD HUNT

No. 779SC1033

(Filed 1 August 1978)

1. Jury § 6.3— examination of prospective jurors—questions about performance—objections properly sustained

Where defense counsel asked one prospective juror if he would permit anything to influence him in his decision and another prospective juror if he would allow the fact that a considerable number of jurors were voting differently from him to influence him to change his verdict, the trial court properly sustained the State's objections, since the questions could not reasonably be expected to result in answers bearing upon the jurors' qualifications but instead would tend to commit the jurors to a decision on the performance of their duties prior to an instruction by the court with regard to their proper performance pursuant to law.

2. Jury § 7.10— policeman as prospective juror—knowledge of defendant's case—no challenge for cause

The trial court did not err in denying defendant's challenge for cause of a prospective juror who was a police officer and who had heard defendant's case discussed by other police officers since it is not required that any individual must be excused for cause solely by virtue of the nature of his employment; the prospective juror clearly indicated that he could base his determination solely upon the evidence and the law without being swayed by anything else; and the court offered defendant the opportunity to examine the witness further, but no additional questions were asked.

3. **Searches and Seizures § 14— consent to search vehicle—failure to find no duress—specific finding not required**

Evidence was sufficient to support the trial court's conclusion that a search of defendant's automobile was made with his consent which was given at a time when he understood his rights, was sober, was not frightened and understood the questions asked him, and the court did not err in failing specifically to find and conclude that the voluntary consent was given without duress, since the court's finding that defendant did not appear to be frightened when he gave consent and that he gave consent voluntarily was sufficient to support a conclusion that consent was given without duress.

4. **Criminal Law § 158.2— argument omitted from record—presumption of propriety**

When a portion of the argument of either counsel is omitted from the record on appeal, the arguments are presumed proper.

5. **Criminal Law § 113.1— jury instructions—misstatement of evidence—no reversible error**

In a homicide prosecution where the trial court charged that one of the State's witnesses had testified that soil samples taken from an area near the victim's body were "the same" as soil samples taken from defendant's shoes, but the witness had in fact testified only that it was highly likely that the samples came from the same source, such inadvertent and slight inaccuracy in recapitulating the evidence was not reversible error, since later in the charge the court specifically instructed the jury that they were to rely upon their own recollection of the evidence and to disregard the court's recollection if the two differed.

APPEAL by defendant from *Graham, Judge.* Judgment entered 12 July 1977 in Superior Court, WILSON County. Heard in the Court of Appeals 6 April 1978.

Defendant was indicted and tried for murder in the first degree. Upon his plea of not guilty, the jury returned a verdict of guilty of murder in the second degree. From judgment sentencing him to imprisonment for a period of sixty years, the defendant appeals.

The State's evidence tended to show that the deceased, Charlene Perry, and the defendant, James Edward Hunt, had dated for a time prior to 8 March 1977, but that she had stopped dating the defendant and was dating another man. Approximately two weeks prior to 8 March 1977, the defendant and the deceased had a conversation at a funeral home. At that time the defendant told the deceased that "if she didn't watch what she was doing, someone would be viewing her body."

The State also offered evidence tending to show that the defendant went to a party in the home of one Christine Hargrove on 8 March 1977. He had a conversation there with the deceased and asked her if he could speak to her for a few minutes. The two went outside the Hargrove home where the defendant bent the deceased backward over an automobile. The deceased appeared to try to get away from the defendant at this time. When told to, he released the deceased and returned to the inside of the home. At this time he displayed a knife and a pistol.

The State's evidence further tended to show that on 8 March 1977, after the defendant and deceased returned to the inside of the Hargrove home, the defendant again asked to speak to the deceased. They then left the home together. The body of the deceased was found later, on the evening of 8 March 1977, beside a public highway. Her death was the result of gunshot wounds.

The defendant was stopped by members of the Vance County Sheriff's Department while driving his automobile at 5:00 a.m. on 9 March 1977. At their request, the defendant followed the officers to the sheriff's office. The defendant then consented to a search of his automobile. During a search of the automobile, blood stains were found. Blood and soil samples were taken from the automobile and from the defendant's shoes and tested by the State Bureau of Investigation. The blood in the car and on the defendant's shoes matched the blood type of the deceased but not that of the defendant. The soil found on the defendant's shoes was tested and found to be of a similar type to that at the point where the deceased's body was found. Elmer T. Miller, a specialist in soil comparison for the State Bureau of Investigation, testified that it was highly likely that the two soil samples came from the same original source.

The defendant offered evidence tending to show that he had gotten along well with the deceased, Charlene Perry. The defendant also offered evidence tending to show that the deceased had been seen going to a party in the apartment of another person at 9:00 p.m. on the evening of her death.

Other relevant facts are hereinafter set forth.

*Attorney General Edmisten, by Associate Attorney Thomas H. Davis, Jr., for the State.*

*Kermit W. Ellis, Jr., for the defendant appellant.*

MITCHELL, Judge.

[1] The defendant first assigns as error the trial court's actions in sustaining the State's objections to two of his questions to prospective jurors during jury selection. The defendant asked one prospective juror: "[I]f you are firmly convinced the defendant was not guilty, would you permit anything to change your mind or influence you in your decision as to how to vote?" The trial court sustained the State's objection to this question. At a later point in jury selection, the defendant asked another prospective juror: "Would you allow the fact a considerable number of jurors were voting differently from you to influence you to change your verdict?" The trial court also sustained the State's objection to this question. The defendant contends that sustaining the objection to either question constituted a failure to permit defense counsel the latitude required in order to adequately assess each of these prospective juror's fitness and constituted reversible error. We do not agree.

We find the two questions were properly excluded as tending to "stake out" the two prospective jurors and cause them to pledge themselves to a future course of action. This is neither contemplated nor permitted by the law. The trial court should not permit counsel to question prospective jurors as to the kind of verdict they would render or how they would be inclined to vote, under a given state of facts. *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975), *modified as to death penalty*, 428 U.S. 902, 49 L.Ed. 2d 1206, 96 S.Ct. 3204 (1976). The hypothetical question posed here could not reasonably be expected to result in an answer bearing upon a juror's qualifications. Rather it would tend to commit the juror to a decision on the performance of his duties prior to an instruction by the court with regard to their proper performance pursuant to law. The trial court properly sustained the objections to both questions. *State v. Poole*, 25 N.C. App. 715, 214 S.E. 2d 774 (1975).

The defendant also contends the trial court erred in halting his attempts to ask repetitive questions without the State having objected. Regulation of the manner and extent of the inquiry of a prospective juror concerning his fitness rests largely in the trial court's discretion and will not be found to constitute reversible error unless harmful prejudice and clear abuse of discretion are

shown. *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975), *modified as to death penalty*, 428 U.S. 903, 49 L.Ed. 2d 1208, 96 S.Ct. 3207 (1976). This contention is without merit.

[2] The defendant next assigns as error the trial court's denial of his challenge for cause of prospective juror, Clarence Varker. Mr. Varker had previously indicated that he was a member of the Henderson Police Department and had heard the defendant's case discussed by other police officers. On this basis the defendant challenged the prospective juror for cause. The court inquired as to whether Mr. Varker could listen to the evidence and the court's instructions on the law and be guided solely by those two things and nothing else. The prospective juror answered affirmatively and the court denied the motion to excuse for cause. The court then specifically offered counsel for the defendant the opportunity to pursue the issue further with the prospective juror, but no further questions were asked.

We note that the defendant exhausted his peremptory challenges and thereafter asserted his right to challenge peremptorily an additional juror. Error by the trial court in denying the defendant's challenge for cause would, therefore, be reversible. *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975), *modified as to death penalty*, 428 U.S. 903, 49 L.Ed. 2d 1208, 96 S.Ct. 3207 (1976); *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970). We do not, however, under the particular circumstances of this case, find the ruling of the trial court erroneous.

The defendant refers us to *State v. Lee*, 292 N.C. 617, 234 S.E. 2d 574 (1977), and contends that the holding of that case required the trial court to grant this defendant's challenge of Mr. Varker for cause due to his status as a police officer and the fact that he had heard the case discussed. We do not find the holding in *Lee* so broad as to have required the trial court to excuse the juror for cause in this case. We decline to hold that any individual must be excused for cause *solely* by virtue of the nature of his employment. Such holding might well require exclusion of numerous classes of individuals solely by virtue of employment or membership in voluntary associations which were perceived as indicating some type of predisposition on the part of a prospective juror.

Neither do we find the fact that the prospective juror had heard the case to be tried discussed previously to be determinative of his competence to serve as a member of the jury. To exclude all individuals who had prior information concerning a given case from jury duty would, in cases involving extensive publicity, often tend to require the exclusion of most individuals who regularly read newspapers or otherwise kept themselves informed as to current affairs of public note. Arguably, this would require our courts to exclude from service those best qualified to hear and deal with evidence and to understand instructions upon the law.

Our Supreme Court specifically indicated in *Lee* that its holding was limited to the particular circumstances of that case. Those circumstances are easily distinguishable from the circumstances presented by the case *sub judice*. In *Lee* the prospective juror was a police officer's wife who knew a crucial State's witness well and had known him over a period of time. More importantly, however, the prospective juror indicated in that case that she felt it possible she might be unable to keep herself from giving more weight to the testimony of police officers she knew than she would give to other witnesses. Here, the prospective juror clearly indicated that he could base his determination solely upon the evidence and the law without being swayed by anything else.

The trial court offered the defendant the opportunity to pursue these matters further with the prospective juror by asking additional questions. No further questions were asked. The record does not indicate what the prospective juror had heard about this case when he heard it discussed by other officers. In order to find error by the trial court in denying the challenge by Mr. Varker for cause, we would, therefore, be required to hold that he could be excluded for cause solely by virtue of his employment as a police officer who had been exposed to some unspecified information about the case to be tried. We do not believe such a holding is required by law, and we decline so to hold. 8 Strong, N.C. Index 3d, Jury, § 7.10, pp. 186-7.

[3] The defendant next assigns as error the ruling of the trial court that the search of the defendant's automobile, which resulted in the introduction into evidence of blood samples and

other physical evidence, was conducted with the defendant's consent. Upon objection by the defendant to the introduction of this evidence, the trial court held a voir dire out of the presence of the jury and heard evidence concerning the events leading up to the search of the defendant's automobile. The law enforcement officers who testified for the State on voir dire indicated that, when the defendant was stopped in the early morning hours of 9 March 1977, he was asked to and did drive his automobile to the sheriff's office. Upon arrival there, the defendant was advised of his constitutional rights and asked by the officers if they could search his automobile. The defendant responded at that time by stating that the keys were in the switch, and they could search the automobile. The officers further testified that the defendant appeared at this time to understand his rights, to be sober, not frightened and to understand the questions asked him. The trial court made specific findings of fact incorporating the substance of this testimony and concluded that the search of the defendant's automobile was with consent which had been given freely and voluntarily.

When the State seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was, in fact, voluntarily given, and not the result of duress or coercion, express or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed. 2d 854, 93 S.Ct. 2041 (1973). Additionally, the presumption is against the waiver of such fundamental constitutional rights. *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971). Where, as here, the defendant objects to the admissibility of the State's evidence on the ground that it was obtained by an unlawful search, it is the duty of the trial court, in the absence of the jury, to hear the evidence of the State and of the defendant as to the lawfulness of the search and seizure. The trial court is further required to make findings of fact from the evidence, and such findings are binding on appeal if supported by competent evidence. *State v. Crews*, 286 N.C. 41, 209 S.E. 2d 462 (1974), *cert. denied*, 421 U.S. 987, 44 L.Ed. 2d 477, 95 S.Ct. 1990 (1975).

Here, the trial court heard evidence and made findings of fact and concluded that the defendant voluntarily consented to the search of his automobile. The defendant contends, however, that the trial court erred in failing to specifically find and conclude that the voluntary consent was given without duress. The defendant additionally contends that such finding would have

been unsupported by the evidence before the trial court. We do not agree.

The trial court heard specific testimony that, at the time the defendant gave his consent to the search, he did not appear to be frightened. The court specifically adopted this as a finding of fact. We think that this evidence and finding, together with the other evidence and findings previously set forth, was sufficient to support a conclusion that consent was given without duress. We do not find the trial court committed error by failing to specifically state in its findings and conclusions that the consent was "without duress." *See State v. Glaze*, 24 N.C. App. 60, 210 S.E. 2d 124 (1974). The trial court found the defendant consented to the search and that his consent was voluntary. As consent is not in fact voluntary if the product of duress or coercion, the trial court's finding and conclusion that the defendant voluntarily consented was also an implicit finding that the consent was without duress. *See State v. Haskins*, 278 N.C. 52, 178 S.E. 2d 610 (1971). Thus, the trial court did not err in admitting the fruits of the consensual search of the defendant's automobile.

[4] The defendant next assigns as error the trial court's action in overruling his objections to certain portions of the district attorney's closing arguments to the jury. The defendant contends that these portions of the closing argument on behalf of the State emphasize the defendant's failure to produce an essential defense witness and tended to require the defendant to prove his innocence. The trial court in its discretion controls the arguments of counsel, and the court's rulings will not be disturbed absent a gross abuse of discretion. *State v. Maynor*, 272 N.C. 524, 158 S.E. 2d 612 (1968). Further, appellate courts do not ordinarily interfere with the trial court's control of jury arguments, unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations. We are unable to make any such determination here, as the argument of counsel for the defendant in its entirety and the majority of the argument of the district attorney are omitted from the record. When a portion of the argument of either counsel is omitted from the record on appeal, the arguments are presumed proper. *See State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976); *State v. Dew*, 240 N.C. 595, 83 S.E. 2d 482 (1954); 1 Strong, N.C. Index 3d, Ap-

State v. Hunt

peal and Error, § 42.2, pp. 293-4. This assignment of error is overruled.

[5] The defendant also assigns as error a portion of the trial court's charge in which the court stated that one of the State's witnesses had testified that soil samples taken from an area near the body of the deceased were "the same" as soil samples taken from the defendant's shoes. The witness had in fact testified that the soil samples matched as to color, texture type and mineral composition. He also testified that it was highly likely they came from the same source. Later in the charge the trial court specifically instructed the jury that they were to rely upon their own recollection of the evidence and to disregard the court's recollection if the two differed. We find, therefore, that this inadvertent and slight inaccuracy in recapitulating the evidence was not reversible error.

We also note that the defendant did not object to this slight misstatement in recapitulating the evidence. Such inadvertent misstatements must be called to the trial court's attention in time for correction if they are to be relied upon on appeal. *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968). We will not hold such slight inaccuracies to be reversible error when not called to the trial court's attention in apt time to afford an opportunity for correction. *State v. Walker*, 6 N.C. App. 740, 171 S.E. 2d 91 (1969).

The defendant also assigned as error certain matters in the record concerning the trial court's charge on circumstantial evidence. These appear to have arisen from transcribing or typographical errors and were waived and abandoned by the defendant during oral arguments. Although we have reviewed them and find no reversible error, we will not deal here with those assignments in detail.

The defendant has brought forward and argued numerous other exceptions and assignments of error. We have reviewed each of them and find that they do not present reversible error.

The defendant received a fair trial free from prejudicial error, and we find

No error.

Chief Judge BROCK and Judge HEDRICK concur.