STATE OF NORTH CAROLINA v. FORNEY BUMGARNER GILBERT

No. 8025SC78

(Filed 17 June 1980)

1. **Criminal Law § 101.2– statements by juror in jury room – no violation of right of confrontation**

The trial court in a homicide case properly found that no evidence came to the attention of the jurors which would violate defendant's right to confront the witnesses against her where defendant contended that one of the jurors stated in the jury room that he realized during the trial that he knew about defendant and that she was not fit to walk the streets and should receive the maximum sentence, and the juror who allegedly made the statements denied on voir dire that he had stated that defendant was not fit to walk the streets and should receive the maximum punishment and testified that he based his verdict on the testimony, arguments of counsel and court's instructions. Furthermore, defendant was not prejudiced by the statements where the juror who allegedly made them was the only juror who voted for a verdict harsher than voluntary manslaughter, the juror eventually also voted with the other jurors for a verdict of voluntary manslaughter, and jurors who purportedly heard the statements did not wish to change their verdict of voluntary manslaughter.

2. **Homicide § 28.2– self-defense – assaults by decedent and another – sufficiency of instructions on reasonable apprehension**

In a homicide prosecution in which defendant testified that decedent's husband was holding her by the hair while the decedent attempted to hit her with a rock, the trial court did not err in instructing the jury that in determining the reasonableness of defendant's apprehension of death or great bodily harm it should consider the size, age and strength of decedent, rather than of both decedent and her husband, and the fierceness of "the assault" rather than the fierceness of both of their assaults, where the court did

State v. Gilbert

instruct that the jury should consider "the fierceness of the assault, if any, upon the defendant," and that the killing would be entirely excused by self-defense if the circumstances as they appeared to defendant at the time were sufficient to create a belief that defendant had to shoot decedent in order to save herself, and where the court summarized defendant's testimony that decedent's husband was holding her while decedent attempted to hit her with a rock, since the court's instructions would permit the jury to find that independent assaults by decedent and by her husband operated to justify defendant's belief that she had to kill decedent in order to save herself.

3. **Homicide § 19.1– rebuttal evidence – deceased's reputation for peace and quiet – knowledge of deceased on the job – waiver of objections by failure to move to strike answers**

In a homicide prosecution in which defendant presented evidence of self-defense and of deceased's character for violence, defendant's objections to the State's rebuttal evidence of deceased's reputation for peace and quiet based only on the witnesses' knowledge of deceased "on the job" ordinarily would have been well taken, but defendant abandoned her objections by failing to pursue her objections and move to strike the answers.

APPEAL by defendant from *Kirby, Judge.* Judgment entered 24 August 1979 in Superior Court, CATAWBA County. Heard in the Court of Appeals 22 May 1980.

The defendant was indicted for the murder in the second degree of Joan Seitz. Joan and Roy Seitz were married, but had been living separate and apart approximately sixteen months. One child was born to the couple and was visiting Roy on the day Joan Seitz was killed. There was some evidence that Joan and Roy Seitz were considering a reconciliation even though defendant had been living with Roy Seitz at his trailer near Lake Norman for several months. The defendant and Joan Seitz had had previous encounters — one on the day of the shooting — at which time vile language had been used.

Defendant pleaded self-defense. The jury, however, returned a verdict of voluntary manslaughter. Thereafter, the defendant made a motion for a new trial, contending that while in the jury room one of the jurors had stated that he knew the defendant or knew about her, that he realized this after the trial had started, and that defendant was not fit to walk the streets of Catawba County. The judge made find-

ings of fact setting out the unanimous verdict, polling of the jury, the testimony of the witnesses, and concluded that nothing came to the attention of the jurors which would violate the defendant's constitutional rights to confront witnesses against her. Defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Alan S. Hirsch, for the State.*

*Matthews & Vaught, by Phillip R. Matthews and Curt J. Vaught, for defendant appellant.*

HILL, Judge.

[1] The defendant contends that the jury received evidence in violation of her constitutional right to confront all witnesses against her and to receive a trial before an impartial jury panel and that she was thereby entitled to a new trial. G. S. 15A-1240 permits impeachment of a verdict as follows:

   (a) Upon an inquiry into the validity of a verdict, no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

                 *    *    *    *    *    *    *    *

   (c) After the jury has dispersed, the testimony of a juror may be received to impeach the verdict of the jury on which he served, subject to the limitations in subsection (a) only when it concerns:

       (1) Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witness against him;

                 *    *    *    *    *    *    *    *

State v. Gilbert

G. S. 15A-1240 allows the trial judge to admit testimony for the purpose of impeaching the verdict of a jury and nothing more. The judge still has the responsibility to consider all the evidence before him and to decide whether the defendant received a fair trial.

It appeared from testimony on voir dire that the juror who knew of the defendant had first voted for second degree murder, but later joined in the vote with other jurors to make unanimous a vote for voluntary manslaughter. The trial judge swore the accused juror, who testified that while he was being examined as a prospective juror he was asked if he had heard anything about the case or the parties that would prejudice the case or affect his ability to be fair. His answer was that it would not. He further stated that he had heard a little but denied he had stated that the defendant was not fit to walk the streets of Catawba County and that the defendant ought to receive the maximum sentence; that he based his verdict on what came from the witness stand and arguments of counsel and the law given by the court.

The determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal. *State v. Moye*, 12 N.C. App. 178, 191, 182 S.E. 2d 814 (1971), *citing* 5 Am. Jur. 2d, Appeal and Error, § 889.

In passing on a similar question, Justice Denny in the case of *State v. Hill*, 225 N.C. 74, 77, 33 S.E. 2d 470 (1945), stated:

The competency of jurors is a question to be passed upon by the trial judge, and the ruling herein on the evidence and facts therefrom is not reviewable. *State v. De-Graffenreid*, 224 N.C. 517, 31 S.E. 2d 523, and the cases there cited.

"In North Carolina, in instances where the contention was made by the defendant that the jury has been improperly influenced, it has been held that it must be shown that the jury was actually prejudiced against the defendant, to avail the defend-

ant relief from the verdict, and *the findings of the trial judge upon the evidence and facts are conclusive and not reviewable."* (Citations omitted.) (Emphasis added.) *State v. Hart,* 226 N.C. 200, 203, 37 S.E. 2d 487 (1946).

In the instant case the trial judge examined the jurors who heard the statements causing concern as well as the juror charged with making the statement, and found as a fact that there was no evidence which came to the attention of the jurors that would violate the defendant's constitutional right to confront the witnesses against her. We agree that the findings are conclusive and not reviewable in this case. Furthermore, we find that defendant suffered no prejudice. The juror who purportedly knew of the defendant was the only juror who voted for a sentence harsher than voluntary manslaughter. He was eventually swayed to the position of the other jurors. One of the jurors stated on voir dire that she and another juror who testified on voir dire "... were satisfied with the end result and didn't want to change [their] verdict from voluntary manslaughter."

[2] The defendant contends that the trial court erred in its instruction to the jury concerning the defendant's claim of self-defense. The disputed portion of the charge is as follows:

> In making that determination [the reasonableness of the defendant's belief that she was in danger of great bodily harm], you should consider the circumstances as you find them to [have] existed from the evidence, including the size and the age and the strength of the defendant as compared to Joan Seitz; the fierceness of the assault, if any, upon the defendant; whether or not Joan Seitz had a weapon in her possession; and the reputation of Joan Seitz, if any, for danger and violence.

The defendant's requested charge, which is quite similar to the court's actual charge, is set out as follows:

> In making this determination, you should consider the circumstances as you find them to have existed from the evidence including the size, age, and strength of the defendant

as compared to Joan Seitz and Roy Seitz, the fierceness of the assaults, if any, upon the defendant, whether or not Joan Seitz had a weapon or rock in her possession, the reputation, if any, of Joan Seitz for danger and violence and the previous acts of violence, if any, of Joan Seitz of which the defendant had knowledge ....

None of the witnesses other than the defendant testified that Roy Seitz seized the defendant by her hair prior to the shot. Nevertheless, the defendant's testimony must be included in the judge's charge for consideration by the jury.

The difference between the two charges is simple. The defendant believes that because her testimony indicated that Roy Seitz was holding her by the hair while the decedent, Joan Seitz, was bringing a rock down upon her head, that the jury should have been charged that the reasonableness of her apprehension should be based on the size, age, and strength of both Joan and Roy Seitz and upon the fireceness of both of their assaults.

The instruction given by the trial judge fully communicated the essence of the law of self-defense. The judge instructed the jury that it should consider "... the fierceness of the assault, if any, upon the defendant ...." The judge also instructed the jury that the killing would be entirely excused on the grounds of self-defense if the "... circumstances as they appeared to the defendant at the time were sufficient to create ..." a belief that defendant had to shoot Joan Seitz in order to save herself. In making that determination, the jury was instructed to consider the circumstances as it found them to have existed from the evidence.

Defendant had testified that Roy Seitz was holding her head against her car window in such a way as to place her in danger of being hit in the head by a rock being wielded by Joan Seitz. The trial judge reminded the jury of this testimony in his summary of the evidence. The jury, if it had chosen to believe defendant's evidence, could have found from the circumstances as they were shown by the evidence to have existed, that both Roy and Joan Seitz's independent assaults operated to justify

defendant's belief that she had to kill Joan in order to save herself. The instruction was proper.

[3]  The defendant contends the trial judge erred by allowing evidence of the deceased's propensity and reputation for peace and quiet. We do not agree. The defendant had testified that Roy Seitz had told her of several threats his wife had made to him and that she was afraid of Joan. In rebuttal, the State called witnesses as to the character and reputation of the deceased. The defendant objected, contending that such rebuttal evidence must be limited to the general reputation of the deceased for peace and quiet and that the rebuttal witnesses only knew deceased "on the job."

> It not having been established that the witness had ever observed the deceased except while on the job, it seems obvious that the witness was not qualified to answer the questions, had they otherwise been proper inquiries. It would seem manifest that even a vicious and violent man would not likely display such propensities to or in the presence of his employer.

*State v. Thomas,* 5 N.C. App. 448, 451, 168 S.E. 2d 459 (1969).

It is settled that where there is evidence of self-defense the State may rebut the defendant's evidence of the deceased's character for violence by evidence of deceased's good character for peace and quiet. *State v. Champion,* 222 N.C. 160, 22 S.E. 2d 232 (1942); *State v. Johnson,* 270 N.C. 215, 154 S.E. 2d 48 (1967). Ordinarily, the objection of the defendant to the evidence offered would have been well taken. However, the defendant did not pursue her objections and move to strike the answers. Her objections were thus abandoned. *Hudson v. Hudson,* 21 N.C. App. 412, 414, 204 S.E. 2d 697 (1974). Defendant further objects to portions of the charge made by the trial judge. We have examined the charge in these respects and find the objections to be without merit.

In the trial of the case we find

---

---

No Error.

Judges MARTIN (Robert M.) and ARNOLD concur.