STATE OF NORTH CAROLINA v. GARY DEVON BUCKOM

No. COA95-668

(Filed 3 June 1997)

**1. Appeal and Error § 418 (NCI4th)— assignment of error— unsupported—abandoned**

Assignments of error which were not supported by argument or authority were deemed abandoned pursuant to N.C. R. App. P. 28(b)(5).

**Am Jur 2d, Appellate Review §§ 544, 545, 547, 550, 553-555, 557.**

**2. Criminal Law § 637 (NCI4th Rev.)— identification testimony—not inherently incredible**

Identification testimony by two robbery victims was not inherently incredible so as to mandate a reversal of defendant's convictions for two armed robberies, notwithstanding the first victim failed to identify defendant in a pretrial showup or from a police photo book, defendant's fingerprints were not found on a cash register and knife handled by the robber at the first crime scene, and there were inconsistencies in descriptions of defendant and his clothing, where the robberies occurred inside convenience stores in well lighted areas, the victims were in close proximity to the robber, and both victims identified defendant in court as the perpetrator.

**Am Jur 2d, Trial §§ 1406, 1407.**

**3. Appeal and Error § 150 (NCI4th); Evidence and Witnesses § 425 (NCI4th)— constitutionality of showup— failure to preserve issue—independent origin of in-court identification**

Defendant failed to preserve for appellate review the issue of whether a pretrial showup at a robbery scene constituted an unlawful search and seizure and may not revive the issue in the guise of argument addressing the denial of his motion to dismiss where no grounds were stated for defendant's objection prior to the robbery victim's in-court identification of defendant; defendant did not request a *voir dire* hearing as to whether the victim's in-court identification was tainted by the alleged unconstitutional showup; defendant has not assigned as error denial of a motion

to suppress the in-court identification; and defendant's written motion to dismiss and oral argument on the motion contained no contention that the in-court identification was so tainted by the showup as to render it inadmissible. Furthermore, based on the evidence adduced at trial, the victim's in-court identification was of independent origin and not tainted by the showup.

**Am Jur 2d, Evidence §§ 560, 626, 627, 629.**

4. **Criminal Law § 450 (NCI4th Rev.)— closing argument— defendant as perpetrator—no gross impropriety**

The prosecutor's argument to the jury that the perpetrator described by a robbery victim "is the same man and it is that man right there" was not grossly improper and did not require the trial court to intervene *ex mero motu*.

**Am Jur 2d, Trial § 554.**

5. **Constitutional Law § 338 (NCI4th)— juror misrepresentation—intelligent peremptory strikes—no constitutional protection**

Denial of a party's right to exercise intelligent peremptory strikes, based solely upon juror misrepresentation during *voir dire*, is not protected under the United States or the North Carolina Constitutions. U.S. Const. amend. VI; N.C. Const. art. I, §§ 19, 24.

**Am Jur 2d, Criminal Law §§ 679, 680**

6. **Criminal Law § 485 (NCI4th Rev.)— juror misrepresentation—motion for new trial—proof required**

A party moving for a new trial grounded upon misrepresentation by a juror during *voir dire* must show: (1) the juror concealed material information during *voir dire*; (2) the moving party exercised due diligence during *voir dire* to uncover the information; and (3) the juror demonstrated actual bias or bias implied as a matter of law that prejudiced the moving party.

**Am Jur 2d, Trial §§ 1656-1658.**

7. **Criminal Law § 485 (NCI4th Rev.)— juror misrepresentation—implied juror bias—circumstances considered**

The presence of juror bias implied as a matter of law may be determined from examination of the totality of the circum-

stances, which incorporate, but are not necessarily limited to, (1) the nature of the juror's misrepresentation, including whether a reasonable juror in the same or similar circumstances could or might have responded as did the juror in question, (2) the conduct of the juror, including whether the misrepresentation was intentional or inadvertent, and (3) whether the defendant would have been entitled to a challenge for cause had the misrepresentation not been made.

**Am Jur 2d, Trial §§ 1656-1658.**

**8. Criminal Law § 485 (NCI4th Rev.).— juror's limited association with witness—failure to disclose—no implied bias— new trial not required**

Failure of a juror in an armed robbery trial to disclose his association with a State's chain of custody witness (a police officer) through his participation in Crimestoppers when asked on *voir dire* if he had worked with the witness on any law enforcement related matter was not so egregious as to establish prejudicial bias implied as a matter of law and thus did not entitle defendant to a new trial since the juror's limited association with the witness would not have merited a challenge for cause; the trial court found that the juror's conduct was not intentional; and the withheld information does not indicate a substantial likelihood of prejudice against defendant.

**Am Jur 2d, Jury §§ 309, 310; Trial §§ 1656-1658.**

**Social or business relationship between proposed juror and nonparty witness as affecting former's qualification as juror. 11 ALR3d 859.**

Appeal by defendant from judgment and commitment entered 15 June 1994 by Judge G. K. Butterfield, Jr. in Wayne County Superior Court on remand from the Supreme Court of North Carolina, *see State v. Buckom*, 111 N.C. App. 240, 431 S.E.2d 776 (1993); *affirmed per curiam*, 335 N.C. 765, 440 S.E.2d 264 (1994), *see State v. Buckom*, 100 N.C. App. 179, 394 S.E.2d 704 (1990), and from order entered 6 March 1997 in Wayne County Superior Court by Judge G. K. Butterfield following hearing ordered 6 December 1996 by the Court of Appeals on defendant's motion for appropriate relief. Heard initially in the Court of Appeals 3 March 1996.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robin P. Pendergraft, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Benjamin Sendor, for defendant-appellant.*

JOHN, Judge.

Defendant appeals convictions of two counts of robbery with a dangerous weapon and contests the trial court's findings on his motion for appropriate relief originally filed with this Court. We hold no prejudicial error affected defendant's trial and affirm the denial of his motion for appropriate relief.

The State's evidence at trial tended to show the following: On the night of 26 January 1989, Mylon Joseph Thornton, Jr. (Thornton) was the clerk on duty at Quick Mart number one located on the corner of Jefferson and Ash Streets in Goldsboro. Between 1:30 and 2:00 a.m., defendant entered the store. Thornton observed defendant for approximately five minutes. Defendant asked Thornton for a pack of cigarettes and inquired about employment at the store. Thornton responded that no positions were available, whereupon defendant reached across the counter, grabbed Thornton, pulled out a paring knife, held it behind Thornton's neck, and ordered him to open the cash register. After Thornton unsuccessfully attempted to comply, defendant placed the knife on the counter and tried to open the register himself, pulling it off the counter with his bare hands. As defendant was doing this, the cash drawer of the register fell to the floor, whereupon defendant grabbed it, exited the store and ran down the street. The register contained $20.00 cash, $10.00 in food stamps, and a credit card in the name of Roberson, a customer who had inadvertently left it behind earlier in the day.

Thornton telephoned police and turned down the store lights. Thornton testified he described the perpetrator to the responding officers as a black male, 29 to 33 years old, over six feet tall, and wearing a blue-green sweater, faded blue-green pants, white tennis shoes, and a baseball cap with the brim pulled down nearly to his eyebrows. On cross-examination Thornton acknowledged the description he gave to police was of a black male approximately 25 years of age, 6'1" to 6'3", wearing dark green work pants, a dark green pullover sweater, faded fatigues, and white tennis shoes.

After hearing a radio broadcast describing the perpetrator as a black male between 25 and 30 years of age wearing a gray sweater,

STATE v. BUCKOM

[126 N.C. App. 368 (1997)]

green pants, and boots, Officer Jeffrey Stewart (Stewart) of the Goldsboro Police Department circled the convenience store area in his patrol car. Stewart encountered defendant walking on Madison Avenue, a few blocks from the Quick Mart, and suspected defendant had committed the robbery because he fit the general description of the perpetrator. Stewart stopped defendant, and in the course of their conversation the latter asked Stewart for a ride to his mother's home. Stewart replied he would need the approval of his supervisor, Corporal James Franklin Green, Jr. (Green), who was located at the Quick Mart, and defendant voluntarily rode in Stewart's patrol car to the store. However, Stewart also took defendant to the Quick Mart for a show-up, a procedure when witnesses view a crime suspect for the purpose of identification.

Stewart parked his patrol vehicle under a canopy covering fuel islands at the Quick Mart, an area he described in his testimony as well-lighted. Stewart exited his automobile and told Green defendant was a possible suspect in the armed robbery, but pointed out the difference between the broadcast description and defendant's attire. Stewart testified Thornton came out of the store, talked with Green, stood within 10 to 15 feet of Stewart's patrol car and looked into the window of the vehicle. However, Thornton testified he approached within a foot or two of the automobile and said "hi" to defendant who he observed only as a shadow due to lack of illumination and darkness of the night. Because Thornton did not positively identify defendant as the robber, Stewart took defendant home.

At 8:30 that morning, Thornton went to the police station and viewed approximately five hundred photographs, including that of defendant, consisting of individuals arrested for serious crimes by the Goldsboro Police Department who were of the same race as well as the approximate age and height of the person who robbed the Quick Mart. Although Thornton recognized some persons portrayed in the photographs, he failed to identify any as the robber. Similarly, on 30 January 1989, he was unable to select the robber from a six photograph array. However, on 10 February 1989, Thornton identified defendant as the perpetrator in a six photograph array.

None of the fingerprints retrieved from the cash register and knife containing sufficient ridge detail for identification purposes were attributable to defendant.

At around 11:30 on 27 January 1989, Karen Benjamin (Benjamin) was working as a cashier at Quick Mart number three on the corner

of Arrington Bridge Road and 117 South in Goldsboro. Defendant and another man entered and purchased gasoline and a cup of ice using a credit card in the name of Roberson. A few seconds later, defendant reentered and obtained Newport and Virginia Slims cigarettes with the same credit card. Approximately 30 minutes later, defendant again returned and purchased brake fluid with the credit card. When Benjamin opened the cash register to deposit the receipt, defendant grabbed her shirt, held a pocket knife to her throat, snatched money from the register drawer, forced her to give him $20.00 from the store safe, and fled. Approximately thirty minutes later, Benjamin described her assailant to Wayne County Sheriff's Deputy Jay Sasser (Sasser) as a black male in his early thirties over six feet tall, and wearing a navy blue shirt, ball cap and blue jeans.

On 8 February 1989 Sasser interviewed defendant and noted his resemblance to Benjamin's description of the robber. Sasser saw defendant write his signature that day and detected similarities to that on credit card receipts signed by the robber. On 9 February 1989 Sasser observed defendant was smoking a Virginia Slims cigarette and that he had in his possession an empty pack of Newport cigarettes. On that same date, Sasser and Sheriff's Department Sergeant Justin Heath (Heath) showed Benjamin a six-photograph line up. Benjamin selected defendant's photograph as the robber. On 10 February 1989 Benjamin went with Sasser, Heath, and Sergeant Jackson to the Mt. Olive District Court for a show-up. Benjamin identified defendant as the perpetrator from a group of more than thirty-three people; fifteen were black males, five of whom had defendant's "general characteristics" according to Heath. At trial, Benjamin identified defendant as the individual who had robbed her the night in question.

Defendant's motion to dismiss the charges "for insufficiency of the evidence", proffered at the close of the State's evidence and renewed at the close of all evidence, was denied. During closing argument, the assistant district attorney asserted:

> Now you'll just have to decide if it was the same man or not. Well, I'm going to tell you it is the same man and it is that man right there.

By jury verdict returned 15 June 1994, defendant was found guilty of two counts of robbery with a dangerous weapon.

On 8 December 1995 defendant filed a motion for appropriate relief with this Court, alleging deprivation of his right to an impartial

jury and to the intelligent exercise of peremptory challenges. Defendant asserted the foreperson of his jury at trial, Mr. Gene Thomas (Thomas), was guilty of material misrepresentation during jury selection. According to defendant, Thomas had been asked whether he knew a potential witness, a police officer, on any law enforcement matters. Thomas responded in the negative when in actuality he had known the witness through participation with the Goldsboro-Wayne Crimestoppers organization (Crimestoppers). By order of this Court, defendant's motion was remanded to the trial court "pursuant to N.C.G.S. 15A-1418(b) for the taking of evidence." The trial court was further directed to "enter an order in which it shall make findings of fact and conclusions of law and [to] grant or deny the relief sought by defendant." Following a hearing, the trial court entered an order 6 March 1997 finding the state's witness at issue, Officer Ted McDonough (McDonough) of the Goldsboro Police Department, whom Thomas knew, "was called solely as a chain of custody witness for certain physical evidence" to which defendant had stipulated and argued it was exculpatory. The court also found the primary evidence against defendant "was the identification of the defendant by two civilian victim eyewitnesses." Further, the trial court determined that while Thomas failed to provide complete and relevant information in response to proper questions during jury selection, he possessed no relevant bias against defendant during his trial. Defendant appeals.

**[1]** Initially we note defendant has failed to bring forward argument or authority in support of his assignments of error 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 15 and 16. These assignments are therefore deemed abandoned pursuant to N.C.R. App. P. 28(b)(5).

We next consider defendant's contention the trial court erred by denying his motion to dismiss the charges. Defendant claims the evidence was insufficient to support his conviction of two counts of armed robbery. We disagree.

The test for sufficiency of the evidence in a criminal case is whether there is substantial evidence of all elements of the offense charged that would allow any rational trier of fact to find beyond a reasonable doubt that the defendant committed the offense. *State v. Richardson*, 342 N.C. 772, 785, 467 S.E.2d 685, 692, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 160 (1996). Substantial evidence is that relevant evidence which a reasonable mind would accept as sufficient to support a conclusion. *State v. Patterson*, 335 N.C. 437, 449, 439 S.E.2d

578, 585 (1994). On appellate review, the evidence "must be viewed in a light most favorable to the State, and the State is to receive any reasonable inference that can be drawn from the evidence." *State v. Hardy,* 339 N.C. 207, 236, 451 S.E.2d 600, 617 (1994). In addition, "[i]t is not the function of this Court to pass on the credibility of witnesses or to weigh the testimony." *State v. Hanes,* 268 N.C. 335, 339, 150 S.E.2d 489, 492 (1966).

**[2]** Defendant does not dispute that robberies by an individual possessing a dangerous weapon occurred on 26 and 27 January 1989, but rather insists the State failed to produce sufficient evidence that defendant was the perpetrator of those crimes. Defendant first maintains the identification testimony of Thornton and Benjamin was so inherently unreliable as to mandate a reversal of defendant's convictions. Citing, *inter alia,* Thornton's failure to identify defendant in the show-up or from the photo book maintained by the Goldsboro Police Department, as well as the lack of fingerprint evidence, defendant insists:

> evidence of defendant's identity as the person who committed the first robbery is so plagued by serious impeachment and strong disproof that those weaknesses also infect the state's proof that defendant was the person who committed the second robbery.

Defendant is correct that identification of a criminal defendant may be so inherently impossible or in conflict with indisputable physical facts or laws of nature as to be insufficient to take that defendant's case to the jury. *State v. Miller,* 270 N.C. 726, 731-32, 154 S.E.2d 902, 905-06 (1967). However, in the case *sub judice,* the identification of defendant reflected in the testimony of Thornton and Benjamin cannot fairly be so characterized. *See State v. Wilson,* 293 N.C. 47, 52, 235 S.E.2d 219, 222 (1977).

The testimony at trial indicated the robberies occurred inside convenience stores in well lighted areas. On each occasion Thornton and Benjamin were in close proximity to the robber and had ample opportunity to observe him. Further, both Thornton and Benjamin identified defendant in court as the perpetrator of the crimes. While the fingerprint evidence failed to inculpate defendant in the crimes, this factor standing alone did not establish the identification of defendant by Thornton and Benjamin as inherently impossible or contrary to the physical facts. Further, inconsistencies in testimony addressing descriptions of defendant were to be considered in the jury's assessment of the credibility of witnesses. *See State v. Turner,*

305 N.C. 356, 362, 289 S.E.2d 368, 372 (1982) (citing *State v. Green*, 296 N.C. 183, 250 S.E.2d 197 (1978); *State v. Orr*, 260 N.C. 177, 132 S.E.2d 334 (1963)).

**[3]** Defendant also argues "the evidence was not sufficient to prove defendant's guilt on either charge" because the show-up conducted with the witness Thornton following the first robbery constituted an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution and Article I, § 20 of the North Carolina Constitution.

A pretrial identification procedure is constitutionally unlawful only if the totality of the circumstances reveals it to be "[s]o unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." *State v. Henderson*, 285 N.C. 1, 9, 203 S.E.2d 10, 16 (1974) (citing *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199 (1967)). Moreover, it is well established that even if a pretrial identification procedure is violative of a criminal defendant's constitutional rights, a subsequent in-court identification of independent origin is admissible. *See United States v. Wade*, 388 U.S. 218, 242, 18 L. Ed. 2d 1149, 1166 (1967) (state must show by clear and convincing evidence that in-court identification is of independent origin); *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401 (1972); *see State v. Osborne*, 83 N.C. App. 498, 350 S.E.2d 909 (1986); *see also State v. Flowers*, 318 N.C. 208, 347 S.E.2d 773 (1986) (pretrial show-up identifications not *per se* violations of defendant's due process rights). In general, the trial court determines whether an in-court identification was of an independent origin by conducting a *voir dire* examination of the witness. *See Henderson*, 285 N.C. at 12, 203 S.E.2d at 17; *State v. Connally*, 46 N.C. App. 43, 50, 243 S.E.2d 788, 793 (1973).

In the case *sub judice*, we note that although defendant proffered a general objection immediately prior to Thornton's in-court identification testimony, no grounds were stated for the objection. *See* N.C.R. App. P. 10(b) (to preserve question for appellate review, party must have made timely objection "stating the specific grounds for the ruling the party desired the court to make"). Further, defendant did not request a *voir dire* hearing on the issue of whether Thornton's in-court identification of defendant may have somehow been tainted by the alleged unconstitutional show-up. In addition, defendant has not now assigned as error denial of a motion to suppress the in-court identification. *See* N.C.R. App. P. 10(a) (scope of appellate review "confined to a consideration of those assignments of error set out in

the record"). Finally, defendant's written motion to dismiss contained no argument that the in-court identification was so tainted by the show-up as to render it inadmissible, nor was this ground asserted in defendant's oral argument to the court on the dismissal motion. *See* N.C.R. App. P. 10(b). Indeed, upon defendant's objection the trial court immediately inquired whether defendant's counsel wished to be heard. Counsel responded in the negative. Accordingly, defendant has failed to preserve this issue for appeal and may not revive it in the guise of argument addressing the denial of his motion to dismiss. Notwithstanding, based on the evidence adduced at trial, we conclude the in-court identification of defendant by Thornton was of independent origin and not tainted by the alleged unconstitutional show-up.

In sum, the evidence presented to the jury was sufficient to establish defendant's guilt as to both charges, and his dismissal motion was properly rejected by the trial court. *See State v. Herring*, 55 N.C. App. 230, 232, 284 S.E.2d 764, 766 (1981); *see also State v. Carter*, 66 N.C. App. 330, 332, 311 S.E.2d 305, 306 (1984) (denial of motion to dismiss proper when jury could draw reasonable inference of defendant's guilt from totality of the evidence presented).

[4] Although he interposed no objection at trial, defendant next maintains the trial court erred by failing to intervene *ex mero motu* to prevent an alleged improper statement by the prosecutor during closing argument. We do not agree.

In general, an attorney may not during closing statement express his personal belief regarding a criminal defendant's guilt or innocence. *See* N.C. Gen. Stat. § 15(A)-1230 (1988); *State v. Locklear*, 294 N.C. 210, 241 S.E.2d 65 (1978). Nevertheless, our courts have consistently held that the argument of counsel is left largely to the discretion of the trial court and "counsel must be allowed wide latitude in the argument of hotly contested cases." *State v. Monk*, 286 N.C. 509, 515-16, 212 S.E.2d 125, 130-31 (1975).

For the trial court to intervene *ex mero motu* to prevent or remedy a prosecutor's injection of personal beliefs into a closing statement, the prosecutor's comments must be grossly improper, *i.e.*, of such an egregious nature as to prejudice the jury. *Id.*; *see also State v. Bunning*, 338 N.C. 483, 489, 450 S.E.2d 462, 464 (1994) (statements by prosecutor during argument "were more in the nature of giving reason why the jury should believe the State's evidence" than vouching for credibility of State's witnesses or of prosecutor).

Defendant complains of the italicized portion of the following excerpt from the prosecutor's closing argument:

> Karen Benjamin said the man that robbed me was a black male, six foot to six foot three, late twenties or thirties, medium build, wearing a baseball hat, not clean shaven, short afro, wearing a navy blue T-shirt. Now you'll just have to decide if it was the same man or not. *Well, I'm going to tell you it is the same man and it is that man right there.*

Assuming *arguendo* the prosecutor's comment was improper, we conclude that, considered in context, it was not so egregious as to rise to the level of gross impropriety. *See Bunning*, 338 N.C. at 489, 450 S.E.2d at 464. The trial court therefore did not err in failing to intervene *ex mero motu*.

**[5]** Defendant's final assertion of error involves denial of his motion for appropriate relief by the trial court upon remand by this Court for hearing. Defendant's argument is twofold. First, he asserts the misrepresentation by juror Thomas during *voir dire* violated defendant's right to an intelligent use of peremptory challenges. Second, defendant maintains the juror's misrepresentation indicated an implied or actual bias on the part of the juror, thereby denying defendant his right to a fair and impartial jury as guaranteed by our state and federal constitutions.

No decisions in North Carolina have specifically addressed the standard for awarding a new trial based upon juror misrepresentation during *voir dire*. In addressing this issue of first impression, we encounter competing policy considerations supporting, on the one hand, the right of an individual to a fair trial guaranteed by our state and federal constitutions and, on the other, the interest of the public and the parties in maintaining a final judgment. *See State v. Lyles*, 94 N.C. App. 240, 244, 380 S.E.2d. 390, 393 (1989) (rule against impeachment of jury verdict supported by "substantial policy considerations" including "stability and finality of verdicts").

Nearly all jurisdictions confronting the issue have established two threshold requirements that must be met prior to awarding a new trial on grounds of juror misrepresentation. *See* Robert G. Loewy, *When Jurors Lie: Differing Standards For New Trials*, 22 Am. J. Crim. L. 733 (1995). First, the moving party must show the juror concealed material information, *i.e.*, information which would have been relevant either to a peremptory challenge or to a challenge for cause.

STATE v. BUCKOM

[126 N.C. App. 368 (1997)]

*See Gray v. Bryant,* 379 S.E.2d 894, 896 (S.C. 1989) (citing *Thompson v. O'Rourke,* 339 S.E.2d 505 (S.C. 1986)). Second, the moving party must show he or she exercised due diligence during *voir dire* to uncover the information. *See State v. McGough,* 536 So. 2d 1187, 1189 (Fla. Dist. Ct. App. (1989)); *Thurmond v. Board of Com'rs of Hall County,* 330 S.E.2d 787 (Ga. Ct. App. 1985). However, once these two threshold requirements have been met, the legal standard for granting a new trial varies markedly among the jurisdictions, *see* Loewy, 22 Am. J. Crim. L. at 747-55, partly because of the multiplicity of opinions by the justices in the landmark United States Supreme Court case of *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 78 L. Ed. 2d 663 (1984).

In *McDonough,* the court addressed whether a juror's failure to respond to a question during *voir dire* violated the plaintiff's right to a fair trial in a product's liability suit. Without discussion in the court's plurality opinion, Justice Rehnquist dismissed as not protected by the Constitution a party's right to intelligent exercise of peremptory strikes when confronted with jury dishonesty during *voir dire. See McDonough Power Equipment,* 464 U.S. at 549, 78 L. Ed. 2d at 667. The two concurring justices likewise attached no significance to the denial of intelligent exercise of peremptory challenges. *See id.* at 556-59, 78 L. Ed. 2d at 672-74. As to defendant's argument that the right to an intelligent exercise of peremptory challenges is embodied in the right to a fair trial protected by the Sixth Amendment and Due Process Clause of the United States Constitution, we are bound by *McDonough. See State v. Gray,* 268 N.C. 69, 79, 150 S.E.2d 1, 9 (1966), *cert. denied,* 386 U.S. 911, 17 L. Ed. 2d 784 (1967) (North Carolina Supreme Court "bound by [] interpretation placed upon [] provision[s] of the Federal Constitution by the Supreme Court of the United States"). We therefore hold denial of a party's right to exercise intelligent peremptory strikes, based solely upon juror misrepresentation during *voir dire,* is not protected under the United States Constitution, and that a new trial is not mandated under such circumstances. We similarly reject defendant's assertion in his motion that the right "to the intelligent exercise of peremptory challenges" is guaranteed by Art. I, §§ 19 and 24 (right to jury trial in criminal cases) of our North Carolina Constitution. *See State v. Tolley,* 290 N.C. 349, 364, 226 S.E.2d 353, 365 (1976) (Art. I, § 19, "law of the land" provision "equivalent to 'due process of law' ").

In *McDonough* the United States Supreme Court also considered whether a juror's misrepresentation during *voir dire* would allow for

the legal conclusion that the juror demonstrated actual or implied bias entitling the prejudiced party to a new trial. Justice Rhenquist, writing for the majority, concluded the party moving for a new trial bore the burden of proving: (1) "a juror failed to answer honestly a material question on *voir dire*;" and (2) "a correct response [by the juror] would have provided a valid basis for a challenge for cause." 464 U.S. at 556, 78 L. Ed. 2d at 671. However, both concurring opinions in *McDonough* stated that dishonesty of a juror was a factor to be weighed in determining whether the juror demonstrated bias. *Id.* at 556, 558, 78 L. Ed. 2d at 672, 673.

For example, in concurrence with Justice Stevens and O'Connor, Justice Blackmun urged allowing a new trial upon a post-trial showing that the juror had "actual bias, or in the exceptional circumstances, that the facts are such that bias is to be inferred." *Id.* at 556-57; 78 L. Ed. 2d 672. In a separate concurrence, Justice Brennan enunciated a slightly different legal standard:

> [T]o be awarded a new trial, a litigant should be required to demonstrate that the juror incorrectly responded to a material question on voir dire, and that, under the facts and circumstances surrounding the particular case, the juror was biased against the moving litigant. . . . When applying this standard, a court should recognize that "[t]he bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." . . . [F]or a court to determine properly whether bias exists, it must consider at least two questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that the juror was actually biased against the litigant. Whether the juror answered a particular question on voir dire honestly or dishonestly, or whether an inaccurate answer was inadvertent or intentional, are simply factors to be considered in this latter determination of actual bias.

*Id.* at 558, 78 L. Ed. 2d at 672, 673 (citations omitted).

[6] Upon analysis of the differing views in *McDonough* as well as those expressed by other courts, *see* Loewy, 22 Am. J. Crim. L. at 747-55, we believe a party moving for a new trial grounded upon misrepresentation by a juror during *voir dire* must show: (1) the juror concealed material information during *voir dire*; (2) the moving party exercised due diligence during *voir dire* to uncover the information; and (3) the juror demonstrated actual bias or bias implied as a mat-

ter of law that prejudiced the moving party. In light of these principles, we proceed to review the trial court's order herein.

Preliminarily, the record reflects the pertinent facts to be as follows: During *voir dire* the prosecutor discovered Juror Thomas was acquainted with one of the potential state's witnesses, McDonough, who subsequently testified solely on the question of the chain of custody of certain physical evidence. Thomas indicated he was acquainted with McDonough through Thomas' work as a planner with the city of Goldsboro, but maintained he could be fair to both sides and was thereafter accepted by the State. The following colloquy subsequently took place between defense counsel and Thomas:

Q: . . . [Y]ou mentioned in your previous employment with the city you knew Mr. McDonough?

A: Yes.

Q: Did you work with him on any law enforcement related matters?

A: No.

During the pendency of his appeal, defendant learned Thomas at the time of trial was an active member of the Board of Directors of Crimestoppers, and that Thomas may also have known McDonough through Thomas' association with Crimestoppers. On remand for hearing on defendant's subsequent motion for appropriate relief based upon the foregoing discovery, the trial court determined that while "Thomas failed to provide complete and relevant information in response to proper questions," he nonetheless "answered jury *voir dire* questions honestly and in good faith" and that "[t]he failure to provide this information was not intentional or knowing." Further, the trial court concluded Thomas "possessed no relevant bias against the defendant during his trial, either actually or impliedly."

We first observe the trial court's order reflects an application of the proper three-part test set out above, and any challenge defendant asserts on this basis is unpersuasive.

Nonetheless, defendant vigorously contests the findings by the trial court, suggesting they are to be reviewed *de novo*. However, the trial court's findings of fact upon hearing of a motion for appropriate relief are binding if supported by the evidence. *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982); *see also State v. Hart*, 226 N.C. 200, 203, 37 S.E.2d 487, 489 (1946) (in instances of alleged

improper influence on jury, "the findings of the trial judge upon the evidence and facts are conclusive and not reviewable"). This standard of review applies even though the trial court may have heard conflicting testimony. *Id.*; *see State v. Martin*, 318 N.C. 648, 650, 350 S.E.2d 63, 64-65 (1986). Moreover, "[t]he determination of the existence and effect of jury misconduct is primarily for the trial court whose decision will be given great weight on appeal." *State v. Gilbert*, 47 N.C. App. 316, 319, 267 S.E.2d 378, 379 (1980). A careful review of the record reveals that the trial court's factual determinations are supported by the evidence presented.

As to the trial court's final "finding of fact," denominated number twenty-five and providing "Mr. Thomas possessed no relevant bias against the defendant during his trial, either actually or impliedly," defendant argues it in actuality constitutes a conclusion of law and is thus reviewable by this Court. Assuming *arguendo* defendant is correct, at least as to the issue of implied bias, we conclude the trial court's determination was appropriate in view of its findings and the evidence presented. *See Peoples v. Peoples*, 10 N.C. App. 402, 408, 179 S.E.2d 138, 142 (1971) ("to call a 'conclusion' a 'finding of fact' does not make it one" (citation omitted)); *see also Montgomery v. Montgomery*, 32 N.C. App. 154, 157, 231 S.E.2d 26, 28-29 (1979) (conclusion of law is "the court's statement of the law which is determinative of the matter at issue between the parties").

[7] The presence of bias implied as a matter of law may be determined from examination of the totality of the circumstances. This would incorporate, but not necessarily be limited to, (1) the nature of the juror's misrepresentation, including whether a reasonable juror in the same or similar circumstance could or might reasonably have responded as did the juror in question, (2) the conduct of the juror, including whether the misrepresentation was intentional or inadvertent, and (3) whether the defendant would have been entitled to a challenge for cause had the misrepresentation not been made, *see McDonough*, 464 U.S. at 556, 78 L. Ed. 2d at 671.

[8] In regard to the challenge for cause factor, we note this Court has specifically rejected entitlement to a challenge for cause as a prospective juror of a police officer who had been exposed to some unspecified information about the case to be tried. *State v. Hunt*, 37 N.C. App. 315, 246 S.E.2d 159, *cert. denied*, 295 N.C. 736, 248 S.E.2d 865 (1978). In *Hunt* we observed a contrary holding

might well require exclusion of numerous classes of individuals solely by virtue of employment or membership in voluntary associations which were perceived as indicating some type of predisposition on the part of a prospective juror.

*Id.* at 319, 246 S.E.2d at 162.

Similarly, in the case *sub judice*, the mere participation by Thomas in Crimestoppers and his prior, limited association through Crimestoppers with a potential state's witness, would not suffice to merit a challenge for cause. *See State v. Benson*, 323 N.C. 318, 324, 372 S.E.2d 517, 519 (1988) (juror's mere acquaintance with four police officers who were prospective witnesses for the State, standing alone, insufficient for challenge for cause). Further, the record supports the trial court's finding that the nature of Thomas' failure to provide information concerning his association with McDonough in Crimestoppers "was not intentional or knowing," and the withheld information itself fails to indicate a substantial likelihood of prejudice against defendant. The trial court therefore properly ruled that Thomas' conduct was not so egregious as to establish prejudicial bias implied as a matter of law.

In sum, no prejudicial error was committed by the trial court during defendant's trial, and his motion for appropriate relief originally filed with this Court was properly denied.

No error in part; affirmed in part.

Judges EAGLES and WALKER concur.