STATE OF NORTH CAROLINA v. JAMES A. WATKINS

No. 8512SC38

(Filed 15 October 1985)

1. **Parent and Child § 2.2; Criminal Law § 169.5— felonious child abuse — evidence that social worker previously in defendant's home — no prejudicial error**

   There was no prejudice in an action for felonious child abuse in the admission of testimony that a social worker had previously had occasion to be in defendant's household where there was evidence that defendant was home alone with the child when she received her injuries, defendant's explanation that he found the child holding onto the faucet with both hands was completely inconsistent with her injuries, the injuries were consistent with the hands being immersed into hot liquid, expert medical testimony was that the burns were caused by someone holding the child's hands in hot liquid, and defendant made inconsistent statements concerning his familiarity with the location of the water heater. There was sufficient evidence to sustain defendant's conviction while disregarding the statements of the witness complained of here. G.S. 15A-1443(a).

2. **Criminal Law § 169.5— felonious child abuse — unresponsive answer by nurse — no prejudicial error**

   There was no prejudicial error in an action for felonious child abuse where a nurse treating the victim stated that she got sick when asked what she did during the child's treatment for burns, then stated that she had to hold the child down immediately after defense counsel objected and the court ruled on the objection. The witness's response that she got sick was not responsive to the State's question and was irrelevant to the issues at trial, but was an honest statement by the witness as to what she did during the child's treatment, and the testimony as to the nurse's role in holding the child down while the doctor chipped away skin and pulled it off was previously admitted without objection.

APPEAL by defendant from *Herring, Judge.* Judgment entered 19 September 1984 in Superior Court, HOKE County. Heard in the Court of Appeals 18 September 1985.

Defendant was convicted of felonious child abuse in violation of G.S. 14-318.4.

The essential facts are:

On 9 March 1984 Susan Moss, a social worker supervisor with the Hoke County Department of Social Services, received a report of child abuse involving Rhonda Monroe. Rhonda Monroe was the three-year-old daughter of Bernice Monroe. She lived

part time with her mother and the defendant at the Meadow Wood Mobile Home Park. Upon receiving this report Ms. Moss visited Rhonda's home accompanied by Detective Harris of the Hoke County Sheriff's Department. Ms. Moss' duties as a social worker involved investigating complaints of child abuse and neglect. The defendant was home alone at the residence when visited by Ms. Moss and Detective Harris.

Ms. Moss told the defendant that she was investigating a report of child abuse. She asked him to tell her how the child was burned. The defendant explained that the child's mother had gone to work and that he and the child were at home alone. He stated that the child was sitting at the table eating and that she asked to wash her hands. He got up to go to the bathroom. When he was coming out of the bathroom, he heard her cry out "Hot!" and then heard a chair fall to the floor. He stated that the child had pulled her chair up to the sink to wash her hands and that when he got into the kitchen she was gripping the faucet with both hands to prevent herself from falling. The sink was approximately one-half full of hot water. The defendant went to a neighbor's house to call the child's mother at work. Ms. Monroe came home and took the child to see a doctor. The doctor told Ms. Monroe to take her to the hospital and she took her to Cape Fear Valley Medical Center.

Ms. Moss asked the defendant's permission to check the hot water temperature and asked him to show her the hot water heater. He stated that he did not know where it was but he thought it was in the bathroom. Ms. Moss, Detective Harris and the defendant went into the bathroom but the hot water heater was not there. They walked outside the mobile home to an area outside the bathroom that appeared to contain the heater. Detective Harris noticed fresh shoe prints in the ground around the area underneath the water heater. The shoe prints matched the soles of the shoes the defendant was wearing that day. There were pieces of fiberglass insulation lying on the ground. The water heater was found behind a panel on the outside of the mobile home. The panel was secured to the structure by several screws. Detective Harris testified that there were scratches around the screwheads that were consistent with them having been removed and replaced. The hot water heater was surrounded by fiberglass insulation in the wall. When asked about the

footprints, the defendant stated that he had been working on a water leak. The hot water temperature was set at 165 degrees.

Nurse Payne of the Cape Fear Valley Medical Center testified that Rhonda Monroe was treated for second and third degree burns of the hands. Ms. Payne described the burns as glove type burns that covered both hands with a "very even" line around each wrist. There were no splash marks on the child's skin. The child was hospitalized for approximately one month.

When Rhonda was released from the hospital, Ms. Moss took her to see Dr. Townsend, the pediatric medical examiner of Hoke County. Based on his seven years experience as pediatric medical examiner and his having examined twenty or thirty cases of suspected child abuse, the court permitted Dr. Townsend to testify at trial as an expert in the area of child medical examination. Dr. Townsend examined Rhonda and the photographs taken of her hands while she was under treatment at the hospital. Dr. Townsend characterized the burns as "emergent type burns," the kind received when some part of the body is "stuck down into hot liquid." He described the burns as "clean burns" of "glove type distribution" as if the hands were "stuck down into the water down to the wrist" with "no splash or uneven burns up above." Dr. Townsend stated that the injuries were not consistent with falling in the water because of the lack of splash marks. Further, Dr. Townsend stated that the burns were not consistent with the child holding onto the kitchen faucet because the severity of the burns was such that if the child had done that the skin would have been torn off of her palms. The photographs showed large blisters on the child's palms with no tears in the skin. Dr. Townsend stated that in his opinion the burns were typical of someone holding the child's hands in hot liquid.

The defendant offered no evidence. From a judgment imposing a sentence of five years, the defendant appealed.

*Attorney General Thornburg, by Assistant Attorney General Robert E. Cansler, for the State.*

*Assistant Public Defender Staples Hughes, for the defendant-appellant.*

EAGLES, Judge.

I

[1]   The defendant first contends that the trial court committed prejudicial error by admitting Susan Moss' testimony that she had been in defendant's home before this incident. We disagree.

The defendant complains about the following exchange during the State's examination of the social worker, Susan Moss.

Q. Did you know Mr. Watkins prior to March 9?

A. Yes. I did.

Q. How long have you known Mr. Watkins?

A. For about a month, several weeks.

Q. Had you had occasion to be in his household before?

Mr. Hughes: Objection.

Court: Overruled.

A. Yes. I did.

Mr. Hughes: Move to strike.

Court: Denied.

Q. When was that?

A. In February.

Mr. Hughes: Objection. Move to strike.

Court: Overruled and denied.

Defendant contends that the question of whether the social worker had been in defendant's home before the date of Rhonda Monroe's injuries was totally irrelevant to any material issue of fact in the trial and was highly prejudicial. Evidence that has no logical tendency to prove a fact in issue is inadmissible. Its admission, however, will not be reversible error unless it misleads the jury or prejudices the opponent. H. Brandis, Brandis on North Carolina Evidence, Section 77 (rev. 2d ed. 1982). The defendant is entitled to a new trial only if the trial errors were material and prejudicial. *State v. Billups*, 301 N.C. 607, 272 S.E. 2d 842 (1981).

The defendant has the burden of proving prejudice and in order to show prejudice the defendant must meet the requirements of G.S. 15A-1443(a). *State v. Alston*, 307 N.C. 321, 298 S.E. 2d 631 (1983). G.S. 15A-1443(a) provides:

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

In this case the defendant failed to carry his burden of showing prejudice by the admission of the social worker's statements. There is no reasonable possibility that the outcome of the trial would have been different had these statements not been allowed in evidence.

The record on appeal and the transcript contain sufficient evidence to sustain the defendant's conviction while disregarding the statements of the witness complained of here. The defendant stated that he was home alone with the child when she received her injuries. The defendant's explanation that he found the child holding onto the faucet with both hands is completely inconsistent with her injuries. The child's palms were burned and covered with blisters that evidenced no tears in the skin. The medical expert testified that she would not have been able to hold onto the faucet with such severe burns and that, had she in fact done so, the gripping action would have ripped the burned skin from her palms. The injuries were consistent with the hands being immersed into hot liquid. The expert stated that in his medical opinion the burns were caused by someone holding the child's hands in hot liquid. Further, the defendant made inconsistent statements concerning his familiarity with the location of the water heater. Footprints matching his were on the ground next to the water heater. Scratches on the screwheads holding the panel covering the water heater indicated that the panel had been removed at some time before Detective Harris visited the defendant's residence. Fragments of insulation identical to the insulation

covering the walls around the water heater were found lying on the ground near the panel.

We believe the evidence is sufficient to sustain the defendant's conviction notwithstanding the admission into evidence of the irrelevant statements by the social worker. We do not believe that a different verdict would have resulted if the complained of testimony had been excluded. Defendant's first assignment of error is overruled.

II

[2] Defendant's second and third assignments of error allege error in the admission of certain testimony of State's witness Nurse Nancy Payne. Defendant contends that the trial court committed prejudicial error by overruling his objection to Nurse Payne's statement that she "got sick" during the child's treatment and in denying his motion to strike her testimony that she had to hold the child down during treatment. We disagree.

The defendant complains about the following exchange during the State's examination of Nurse Payne.

Q. Did you have occasion to participate in the treatment of Rhonda Monroe during the time she was in the hospital?

A. Yes. I did.

Q. Can you describe what course of treatment or treatments were followed during the time she was in the hospital?

A. After all the dead tissue was removed, she was taken to the physical therapy department. And her hands were put in the whirlpool to help remove all the dead tissue.

Q. When you say the dead tissue was removed, can you tell the jury how that was done?

A. It was done by a surgeon and I holding her down and him chipping away skin and pulling it off.

Q. Was there any pain involved in that?

A. Yes. There was.

Q. Were you yourself involved in that procedure?

A. Yes. I was.

Q. What did you do?

A. I got sick.

Mr. Hughes: Objection.

Court: Overruled.

A. I had to hold her down.

Mr. Hughes: Move to strike the answer.

Court: Denied.

The defendant argues that the witness' response that she "got sick" was irrelevant, unresponsive and highly prejudicial. He also argues that the response "I had to hold her [Rhonda] down" was repetitive and highly prejudicial. The defendant has not demonstrated any prejudice except to assert that it existed.

The transcript of this exchange makes it clear that the answer "I got sick" was not responsive to the State's question. Defendant argues that the response "I got sick" leaves the impression that the witness was coached to give that answer. While the response is irrelevant to the issues at trial, it appears to have been an honest statement by the witness as to what she did during the child's treatment.

The second statement "I had to hold her down" immediately followed defense counsel's objection and the court's ruling on the objection and motion to strike. There was no new question asked of the witness at that time. The same testimony as to the nurse's role in holding the child down while the doctor chipped away skin and pulled it off was previously admitted without objection. *State v. Jarrett*, 271 N.C. 576, 157 S.E. 2d 4, *cert. denied*, 389 U.S. 865 (1967); *Shelton v. Southern Railway Co.*, 193 N.C. 670, 139 S.E. 232 (1927). While the answer was repetitive, its repetition did not prejudice the defendant. Accordingly, these assignments of error are overruled.

From a review of the record we conclude that the defendant received a fair trial free from prejudicial error.

No error.

Judges JOHNSON and PARKER concur.