STATE OF NORTH CAROLINA v. JEFFREY ALAN BRADY

No. COA01-104

(Filed 18 December 2001)

**1. Indictment and Information— amendment—attempting to obtain a controlled substance by forgery—name of controlled substance**

The trial court did not err in an attempting to obtain a controlled substance by forgery case by allowing an amendment to change the name of the controlled substance from "Zanax" to "Percocet" in the indictment, because: (1) an inadvertent variance neither misleads nor surprises the defendant as to the nature of the charges; and (2) the name of the controlled substance was not necessary to charge defendant with a crime under N.C.G.S. § 90-108(a)(10) since the charge remained the same whether the controlled substance was a Schedule II or a Schedule IV drug.

**2. Drugs— attempting to obtain a controlled substance by forgery—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of attempting to obtain a controlled substance by forgery under N.C.G.S. § 90-108(a)(10), because: (1) a pharmacist testified that defendant presented a Percocet prescription with the purported signature of a doctor, and the pharmacist verified that the doctor did not write such a prescription; (2) the doctor testified that although his name may have been on the Percocet prescription presented to the pharmacist, the doctor had not signed such a prescription or authorized anyone else to do so; and (3) evidence that defendant presented the Percocet prescription and had it in his possession leads to the presumption that he either forged the document or had knowledge it was a forgery.

Appeal by defendant from judgments dated 31 August 2000 by Judge Russell G. Walker, Jr.[1] in Randolph County Superior Court. Heard in the Court of Appeals 4 December 2001.

---

1. Although Judge C. Preston Cornelius presided over Defendant's trial, Judge Russell G. Walker, Jr. imposed Defendant's sentences.

STATE v. BRADY

[147 N.C. App. 755 (2001)]

*Attorney General Roy Cooper, by Assistant Attorney General Harriet F. Worley, for the State.*

*Moser, Schmidly, Mason & Roose, by Richard G. Roose, for defendant-appellant.*

GREENE, Judge.

Jeffrey Alan Brady (Defendant) appeals judgments dated 31 August 2000 entered consistent with a jury verdict finding him guilty of obtaining a controlled substance by fraud and of attempting to obtain a controlled substance by fraud or forgery in violation of N.C. Gen. Stat. § 90-108(a)(10).[2]

On 27 January 1997, a Randolph County Magistrate issued a warrant for Defendant's arrest finding probable cause Defendant attempted

> to intentionally acquire and obtain possession of [P]ercocet[], a quantity of 40 tablets, a controlled substance included in Schedule II of the North Carolina Controlled Substance[s] Act, from Pharmacist[] Rosemar[y] Lawrence [(Lawrence)] at Eckerd Drug, by forgery in that [Defendant] forged the signature of Dr. Newton on a [prescription] dated 1/23/97.

On 25 August 1997, the Randolph County Grand Jury issued an indictment (the Indictment) charging Defendant with attempting to obtain a controlled substance by forgery. The Indictment specifically alleged Defendant:

> did intentionally attempt to acquire and obtain possession of Xanax (alprazolam), a controlled substance included in Schedule IV of the North Carolina Controlled Substances Act, from [Lawrence] of Eckerd Drug Store . . . by forgery in that [Defendant] presented a prescription for that substance on which [Defendant] forged the signature of Doctor Newton, M.D., on the prescription.

On 5 May 1999, after a jury was impaneled, the State made a motion to amend the Indictment to change the drug from "Xanax" to "Percocet[]." The State argued the substitution of a different controlled substance did not alter the charge as the elements and the penalty level for the crime remained the same. Over Defendant's

---

2. Defendant presents no argument in his brief to this Court relating to the conviction for obtaining a controlled substance (Xanax) by fraud.

STATE v. BRADY

[147 N.C. App. 755 (2001)]

objection, the trial court granted the State's motion allowing the State to amend the Indictment.

At trial, Lawrence testified that on 20 January 1997, a man, whom she later identified as Defendant, entered the Eckerd Drug Store (Eckerd) where she worked and presented a prescription for Xanax, with the name "Jeffrey Brady," to be filled. The prescription had no address or telephone number on it, and was written from UNC-Memorial Hospital at Chapel Hill. After Defendant had given Lawrence his address and telephone number, Lawrence filled the Xanax prescription. Six days later, on 26 January 1997, Defendant returned to Eckerd, where he presented a prescription for "Percocet" (the Percocet prescription). Lawrence became suspicious because Defendant had been there "a few days earlier and [had] gotten another controlled substance." Lawrence felt "uncomfortable" filling the Percocet prescription and could not reach the physician to verify whether the prescription was legitimate, so she returned it to Defendant.

On 27 January 1997, Lawrence telephoned Dr. Warren Newton (Dr. Newton) to verify whether the Xanax prescription and the Percocet prescription were legitimate. Lawrence was told by Dr. Newton that he had not written either prescription.

Dr. Newton testified he practiced medicine at the University of North Carolina, and Defendant was one of Dr. Newton's patients. Dr. Newton recognized the Xanax prescription as it was written on a form used in his office. The Xanax prescription was signed in Dr. Newton's name; Dr. Newton, however, testified it was not his signature and he had not authorized anyone to sign the Xanax prescription for him. Although Dr. Newton had written Defendant a prescription for Percocet in the past, he had not written such a prescription in January 1997 and had not authorized anyone to write such a prescription during that time frame.

Defendant testified that he was taking medications prescribed by several doctors and had received a prescription for Xanax from the Randolph County Mental Health Center. Defendant testified the prescription he received from the Randolph County Mental Health Center was sufficient to meet his needs. Sometime in January or February 1997, Defendant noticed a prescription missing from his refrigerator. Approximately two years prior to this date, Defendant's first cousin, Donna Lynn Cox, had a prescription pad from North Carolina Memorial Hospital in her possession. Defendant denied writ-

ing the Xanax prescription or presenting any prescriptions to Eckerd on 20 òr 26 January 1997.

Defendant made motions to dismiss the charges against him for insufficiency of the evidence at the close of the State's evidence and at the close of all the evidence. Both motions were denied. The jury returned verdicts finding Defendant guilty of obtaining a controlled substance by forgery and for attempting to obtain a controlled substance by forgery.

---

The issues are whether: (I) an amendment to change the name of a controlled substance in an indictment for attempting to obtain a controlled substance by forgery substantially alters the charge set forth; and (II) the State presented sufficient evidence Defendant attempted to obtain a controlled substance by forgery.

I

[1] Defendant argues the trial court erred in allowing the State to amend the Indictment because "the amendment changed the substance which [Defendant] was charged with attempting to obtain from a Schedule [IV] controlled substance to a [S]chedule [II] controlled substance," thus, substantially altering the charge as set forth in the Indictment. We disagree.

"A bill of indictment may not be amended," N.C.G.S. § 15A-923(e) (1999), if the "change in the indictment . . . would substantially alter the charge set forth in the indictment," *State v. Carrington*, 35 N.C. App. 53, 58, 240 S.E.2d 475, 478, *appeal dismissed and disc. review denied*, 294 N.C. 737, 244 S.E.2d 155 (1978). Thus, a "non-essential variance is not fatal to the charged offense," and any "averment unnecessary to charge the offense . . . may be disregarded as inconsequential surplusage." *State v. Grady*, 136 N.C. App. 394, 396-97, 524 S.E.2d 75, 77 (change in address on indictment for maintaining a dwelling for the use of a controlled substance was not a substantial alteration), *appeal dismissed and disc. review denied*, 352 N.C. 152, 544 S.E.2d 232 (2000); *see State v. Joyce*, 104 N.C. App. 558, 573, 410 S.E.2d 516, 525 (1991) (change from " 'knife' " to " 'firearm' " in indictment for assault with a deadly weapon did not "alter the burden of proof or constitute a substantial change which would justify returning the indictment to the grand jury"), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992). This is so because an inadvertent variance neither misleads nor surprises the defendant as to the nature of the charges.

*State v. Campbell*, 133 N.C. App. 531, 535-36, 515 S.E.2d 732, 735, *disc. review denied*, 351 N.C. 111, 540 S.E.2d 370 (1999).

Section 90-108 provides it shall be unlawful for any person "[t]o acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge[.]" N.C.G.S. § 90-108(a)(10) (1999). A "controlled substance" is "a drug, substance, or immediate precursor included in Schedules I through VI" of the Controlled Substances Act. N.C.G.S. § 90-87(5) (1999). Under section 90-108(a)(10), it is not necessary to specifically designate the controlled substance at issue to set out the charge of "acquir[ing] or obtain[ing] possession of a controlled substance by . . . fraud [or] forgery." *See* N.C.G.S. § 90-108(a)(10).

In this case, the amendment to the Indictment to change the controlled substance named therein from "Xanax" to "Percocet" did not substantially alter the charge against Defendant. The name of the controlled substance was not necessary to charge Defendant with a crime under section 90-108(a)(10), as the charge remained the same whether the controlled substance was a Schedule II or a Schedule IV drug. Moreover, Defendant was neither misled nor surprised by the subsequent change in the Indictment as the State was required to prove the same elements. Accordingly, the trial court did not err in permitting the State to change the name of the controlled substance listed in the Indictment.

## II

[2] Defendant next argues the trial court erred in failing to dismiss the charge as listed in the Indictment because "the State presented insufficient evidence to show . . . Defendant fraudulently attempted to acquire the substance, Percocet." We disagree.

A motion to dismiss must be denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that [the] defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

STATE v. BRADY

[147 N.C. App. 755 (2001)]

A person attempts to violate section 90-108(a)(10) "by attempting to acquire a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge." *State v. Booze*, 29 N.C. App. 397, 399, 224 S.E.2d 298, 300 (1976). "Knowledge that the prescription is false or forged is an essential element of the offense under G.S. 90-108(a)(10)." *State v. Baynard*, 79 N.C. App. 559, 562, 339 S.E.2d 810, 812 (1986). Knowledge is presumed "[w]hen a defendant is found with a forged paper and is endeavoring to obtain property with it." *State v. Fleming*, 52 N.C. App. 563, 568, 279 S.E.2d 29, 32 (1981).

In this case, viewing the evidence in the light most favorable to the State, there was substantial evidence Defendant attempted to acquire Percocet by forgery. Lawrence testified Defendant presented the Percocet prescription with the purported signature of Dr. Newton and she later verified Dr. Newton did not write such a prescription. Moreover, Dr. Newton testified that although his name may have been on the Percocet prescription presented to Lawrence, he had not signed such a prescription nor authorized anyone else to do so, and had not written a prescription for Percocet in January 1997. Since there is evidence Defendant presented the Percocet prescription and had it in his possession, it is presumed he either forged the document or had knowledge it was a forgery. Accordingly, the trial court did not err in denying Defendant's motion to dismiss the charge of attempting to obtain a controlled substance by forgery.

No error.[3]

Judges McCULLOUGH and CAMPBELL concur.

---

3. We do not address Defendant's remaining assignments of error as he has failed to present any arguments in his brief to this Court relating to those assignments of error. *See* N.C.R. App. P. 28(b)(5).