An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-849

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

|                           |                        |
|---------------------------|------------------------|
| v.                        | Rowan County           |
|                           | Nos. 11 CRS 51259      |
| RODERICK TYRONE POLK,     | 11 CRS 51260           |
| Defendant.                | 11 CRS 51261           |
|                           | 11 CRS 55416           |

Appeal by defendant from judgments entered 13 December 2012 by Judge Anna Mills Wagoner in Rowan County Superior Court. Heard in the Court of Appeals 8 January 2014.

*Attorney General Roy Cooper, by Special Deputy Attorney General Patrick S. Wooten, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Mary Cook, for defendant-appellant.*

GEER, Judge.

Defendant Roderick Tyrone Polk appeals from his convictions of trafficking in opium, two counts of felony maintaining a dwelling to keep or sell controlled substances, and two counts of felony possession of cocaine. On appeal, defendant primarily challenges the trial court's reinstruction of the jury with respect to the two counts of maintaining a dwelling to keep or

sell controlled substances. We hold that defendant has failed to show any risk of a non-unanimous verdict given the initial instructions and the verdict sheet and has failed to establish any other error in the reinstruction.

## Facts

On 24 February 2011, Detective Jamie Beach of the Kannapolis Police Department executed a search warrant for defendant's house in Kannapolis, North Carolina. Detective Beach applied for the warrant based on three controlled buys of crack cocaine that took place at defendant's house. The front door of the one-story house opened into a living room. In back of the living room was a kitchen, while to the left was the front bedroom. To the left of the kitchen was the back bedroom, and to the right, there was an "8 by 10" room furnished with only a stool and a chair. The house's single bathroom was connected to the back bedroom. The front bedroom belonged to defendant, and the back bedroom belonged to Ronald Church and Mr. Church's wife or girlfriend.

Defendant's girlfriend, Tiffany Spry, answered the door when the police arrived to search the premises. Mr. Church and his wife or girlfriend were in the back bedroom, while defendant was undressed in the bathroom, claiming he had just showered.

Detective Beach allowed defendant to dress, and then the officers searched the house.

In defendant's room, the officers located defendant's wallet, which contained $822.00 in cash, consisting of one $100.00 bill, 29 $20.00 bills, seven $10.00 bills, 10 $5.00 bills, and 22 $1.00 bills. One of the $20.00 bills found in defendant's wallet was a bill that Detective Beach had used in one of the previous controlled buys of crack cocaine that took place at defendant's house. There was also a Duke Power bill in defendant's name in the bedroom.

Defendant's room contained a linen cabinet, and on top of it, the officers found a soap dish with a red straw beside it -- both the dish and the straw contained a white powder residue. There was also white powder on top of the cabinet itself. In the middle of a stack of sheets on a shelf in the cabinet, the officers found a plastic bag containing nine hydrocodone pills. Also in the cabinet, the officers found an empty hydrocodone pill bottle for Ms. Spry, but the dosage for the pills prescribed was different than the dosage of those found in the plastic bag.

Finally, the officers located 42 rounds of 9 millimeter ammunition on top of a dresser in defendant's room, and 43 rounds of "45 automatic" ammunition in the bottom drawer of the

same dresser. The two types of ammunition were in boxes that each held 50 rounds, meaning that roughly "a clip full" of ammunition was missing from each box.

In the kitchen, on a counter, the officers found a butter dish containing a razor blade, with white powder residue on both the dish and the razor. Residue from the razor blade tested positive for cocaine. In the "8 by 10" room next to the kitchen, the officers found an ash tray and chunks of brillo commonly used to smoke crack cocaine. In the back bedroom, the officers found a pill container with white residue that tested positive for crack cocaine; two glass pipes and chunks of brillo used for smoking crack cocaine; and marijuana paraphernalia.

On 21 July 2011, Detective Beach executed a second search warrant for defendant's house. On this occasion, defendant and Ms. Spry were the only people in the house. Prior to the search, Detective Beach saw a black male's arm hanging out of the house's bathroom window dropping on the ground a plastic container that held a plastic bag containing over a gram of crack cocaine. Defendant admitted the container "belong[ed] to him," but claimed "[h]e was holding it for a friend." During this search, officers also found, under the mattress in defendant's bedroom, a single hydrocodone pill identical to the

nine hydrocodone pills they found in defendant's bedroom during the prior search.

On 5 July 2011, defendant was indicted for felony possession of cocaine, felony maintaining a place to keep controlled substances, trafficking in opium, and possession of drug paraphernalia, all based on the 24 February 2011 search. On 28 November 2011, defendant was further indicted for felony possession of cocaine and felony maintaining a place to keep and sell controlled substances, with both offenses based on the 21 July 2011 search.

At trial, Ms. Spry testified to the following for the defense. Ms. Spry stayed at defendant's house, in defendant's bedroom, five to six nights a week. Ms. Spry claimed that all of the hydrocodone pills found in defendant's bedroom belonged to her and that she had a valid prescription for the pills to treat back pain. In addition, Ms. Spry testified she owned the soap dish and straw found in defendant's room and used those objects to crush and snort her prescription hydrocodone.

On 24 February 2011, Ms. Spry put the bag containing her nine hydrocodone pills in the stack of sheets for safekeeping. On 21 July 2011, Ms. Spry stuck a single hydrocodone pill under defendant's mattress because she was getting ready to take it and was "startled" by a knock at the door. According to Ms.

Spry, defendant had no knowledge that she had hydrocodone in his house on either date. Ms. Spry never witnessed anyone use or buy drugs at defendant's house. In addition to Ms. Spry's testimony, defendant also presented evidence of a hydrocodone pill bottle in Ms. Spry's name for the dosage of the pills found in his bedroom.

The State dismissed the charge for possession of drug paraphernalia. The jury found defendant guilty of the remaining charges. The trial court sentenced defendant to 70 to 84 months imprisonment for trafficking in opium. The court consolidated the remaining charges into a single judgment and sentenced defendant to a consecutive, presumptive-range term of six to eight months imprisonment, but suspended the sentence and placed defendant on supervised probation for 24 months beginning upon defendant's release from imprisonment on the trafficking conviction. Defendant timely appealed to this Court.

I

Defendant first argues that the State failed to present substantial evidence of defendant's charges for possession of cocaine on 24 February 2011 and trafficking in opium. However, defendant failed to move to dismiss any of his charges at trial. Rule 10(a)(3) of the Rules of Appellate Procedure provides that "a defendant may not make insufficiency of the evidence to prove

the crime charged the basis of an issue presented on appeal unless a motion to dismiss the action, or for judgment as in case of nonsuit, is made at trial."

Recognizing his failure to preserve these issues for appeal, defendant asks this Court to suspend the preservation requirements of Rule 10 pursuant to Rule 2 of the Rules of Appellate Procedure in order to reach the merits of his arguments. Although Rule 2 allows for suspension of the Rules of Appellate Procedure in order to "prevent manifest injustice to a party, or to expedite decision in the public interest," we find neither circumstance present here. We, therefore, decline defendant's request to invoke Rule 2 and do not address defendant's arguments. *See Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (observing Rule 2 "must be invoked 'cautiously'" and reaffirming "prior cases as to the 'exceptional circumstances' which allow the appellate courts to take this 'extraordinary step'" (quoting *State v. Hart*, 361 N.C. 309, 315, 317, 644 S.E.2d 201, 205, 206 (2007))).

## II

Defendant next argues that the trial court erred in instructing the jury on the issue of constructive possession with respect to the charge of possession of cocaine on 24

February 2011. Defendant concedes he failed to preserve this issue for appeal and, therefore, seeks plain error review. Our Supreme Court has explained that

> [f]or error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice -- that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

The State contends that defendant invited any error with respect to this issue and, as such, cannot now claim he was prejudiced by the instruction. *See* N.C. Gen. Stat. § 15A-1443(c) (2013) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct."). The State points to an exchange between the court and the attorneys that occurred during the State's case-in-chief. The transcript, however, makes plain that this was merely a preliminary discussion of possible instructions generally. We have found no indication in the transcript that

defense counsel ever specifically consented to the constructive possession instruction.

Jury instructions must be "'based upon a state of facts presented by some reasonable view of the evidence.'" *State v. Sweat*, 366 N.C. 79, 89, 727 S.E.2d 691, 698 (2012) (quoting *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 699 (1973)). This Court reviews arguments that jury instructions were not supported by the evidence de novo. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

"Under the theory of constructive possession, a person may be charged with possession of an item such as narcotics when he has both the power and intent to control its disposition or use, even though he does not have actual possession." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (internal citation and quotation marks omitted). "'Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.'" *Id.* (quoting *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972)). "However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other

incriminating circumstances before constructive possession may be inferred." *Id.*

Here, the State contended that defendant constructively possessed the cocaine residue on the razor blade found in the butter dish that was sitting on the kitchen counter. Defendant argues that the evidence showed he was not in exclusive possession of the razor blade in the kitchen since Detective Beach testified that Mr. Church and his wife or girlfriend also lived in the house. Defendant further contends the State failed to show other incriminating circumstances allowing the inference that he constructively possessed the razor blade. We disagree.

The State's evidence showed that Detective Beach first "came into contact with [defendant] as a result of some information [he] received" and that, as a result of that information, the detective conducted three controlled buys of crack cocaine from defendant's house prior to 24 February 2011. As a result of those controlled buys, defendant was the subject of the search warrant executed on 24 February. On 24 February, one of the $20.00 bills in defendant's wallet was a bill that had previously been used by Detective Beach to conduct a controlled buy of cocaine at defendant's house. This evidence created a reasonable inference that defendant sold cocaine to

the informant during at least one of the three controlled buys conducted in his house prior to 24 February.

Also on 24 February, defendant's wallet contained $822.00 in cash, consisting of one $100.00 bill, 29 $20.00 bills, seven $10.00 bills, 10 $5.00 bills, and 22 $1.00 bills. Detective Beach testified that this large amount of cash in various denominations was indicative of drug sales, and that lower level crack cocaine purchases are generally for $20.00 or $40.00 worth of cocaine. The amount and denomination of cash in defendant's wallet, therefore, also constituted an incriminating circumstance. *See State v. Brown*, 310 N.C. 563, 569-70, 313 S.E.2d 585, 589 (1984) (holding State presented substantial evidence that defendant constructively possessed cocaine in apartment based, in part, on evidence that defendant had large amount of cash in his pockets). Although no guns were found, the officers did find two boxes of ammunition in defendant's room, with each box missing several rounds, and Detective Beach testified that "individuals known to sell and keep drugs carry firearms."

When searching defendant's room on 24 February, the officers located a soap dish and a "little cut piece of red straw," with white powder residue on both objects and on the surface where they were located. Detective Beach testified that

the straw was "common with people snorting either cocaine or crushing pills and snorting them."[1] The presence of this item used to ingest cocaine, and the powder residue on the straw and surrounding surfaces, out in the open in defendant's bedroom on 24 February provided an additional incriminating circumstance that defendant constructively possessed the cocaine in the kitchen. *See State v. Chisholm*, ___ N.C. App. ___, ___, 737 S.E.2d 818, 822 (holding State presented substantial evidence of constructive possession, in part, because "defendant was sleeping in the bed in the bedroom where drugs were found, . . . [and] plastic baggies, drug paraphernalia, and an electronic scale containing white residue were also in the bedroom"), *disc. review denied*, 366 N.C. 591, 743 S.E.2d 222 (2013); *State v. Peek*, 89 N.C. App. 123, 126, 365 S.E.2d 320, 323 (1988) (holding

---

[1]Defendant argues that Detective Beach's testimony identifying the residue in the soap dish and on the straw as cocaine was erroneously admitted since the State did not present evidence of chemical analysis showing the residue was cocaine and not hydrocodone, as defendant's evidence showed. *See State v. Meadows*, 201 N.C. App. 707, 712-13, 687 S.E.2d 305, 309 (2010) (holding trial court erroneously admitted officer's testimony that substance was cocaine based solely on his visual observation since controlled substances defined in terms of chemical composition can only be identified through use of a chemical analysis rather than through use of lay testimony based on visual inspection). While defendant is correct, the detective's separate testimony that the straw was an object commonly used to ingest cocaine, along with the powder residue on the straw, soap dish, and surrounding surface, nonetheless provided an incriminating circumstance with respect to defendant's constructive possession of the cocaine in the kitchen.

State presented substantial evidence of constructive possession based, in part, on evidence that "contraband was found in four different rooms, some of it in plain view and some of it hidden").

On 21 July 2011, defendant admitted possessing a container holding over a gram of crack cocaine. Moreover, on both 24 February and 21 July, officers found hydrocodone hidden in defendant's bedroom. The presence of another controlled substance in defendant's bedroom on both occasions also constituted an incriminating circumstance in this case. *See State v. James*, 81 N.C. App. 91, 92, 95, 344 S.E.2d 77, 79, 81 (1986) (holding State presented substantial evidence of defendant's constructive possession of heroin underneath front porch floorboard of his sister's house where he occasionally stayed based, in part, on evidence of defendant's possession of cocaine found in kitchen of same house).

Defendant nonetheless cites *State v. McLaurin*, 320 N.C. 143, 357 S.E.2d 636 (1987), as supporting his contention that the trial court erred in instructing on constructive possession. However, in *McLaurin* there was no evidence of incriminating circumstances personally linking the defendant, as opposed to other occupants of the premises searched, to the contraband. *Id.* at 144, 357 S.E.2d at 637 (holding State failed to present

substantial evidence of constructive possession when evidence showed defendant, her apparent husband, and children all lived in house; paraphernalia was found throughout house, including in pocket of man's overcoat and in "drawer full of children's clothing in a bedroom apparently occupied by children"; and officers saw defendant's apparent husband and another man entering and leaving on day of search but did not see defendant doing so).

Defendant also points to this Court's determination in *James* that evidence was insufficient that a co-defendant constructively possessed the cocaine at issue. With respect to the co-defendant in *James*, however, the evidence showed that he did not live in the house; no evidence showed he had been at the house more than two times; no circumstances linked him to the cocaine at issue other than evidence that he was "'sneaking around'" the room where cocaine was located with a gun in his hand; and "[a]ll the evidence suggest[ed] that [he] was looking for a place to hide the gun." 81 N.C. App. at 96, 344 S.E.2d at 81.

Since, here, defendant lived in the house, and the State's evidence linked him personally to possession of the cocaine found in the kitchen, *McLaurin* and *James* are distinguishable. We hold that the evidence in this case permitted, at the very

least, a reasonable inference that on 24 February, defendant constructively possessed the cocaine residue on the razor blade on his kitchen counter. *See State v. Alston*, 193 N.C. App. 712, 716-17, 668 S.E.2d 383, 387 (2008) (holding State presented substantial evidence of constructive possession when even though defendant did not reside in house being searched, defendant "regularly visited and sold drugs from" house; defendant was present in room containing drugs prior to officers entering house for search; defendant sold cocaine to another person in house earlier in evening; other drug dealer, who lived in house, kept only small amount of cocaine on his person and kept his cocaine buried in yard; and defendant's gun was found in room containing drugs), *aff'd per curiam*, 363 N.C. 367, 677 S.E.2d 455 (2009). The trial court, therefore, properly instructed the jury on constructive possession with respect to the charge of possession of cocaine on 24 February.

## III

Defendant's third argument is that the trial court erred in reinstructing the jury on the two charges for felony maintaining a dwelling to keep or sell controlled substances. Defendant contends the reinstruction led to fatally ambiguous verdicts for those charges and, therefore, violated his right to a unanimous jury verdict under Article I, Section 24 of the North Carolina

Constitution and N.C. Gen. Stat. § 15A-1237(b) (2013). This issue is properly before the Court despite defendant's failure to object below. *See State v. Johnson*, 183 N.C. App. 576, 582, 646 S.E.2d 123, 127 (2007) (explaining, in context of disjunctive instruction argument, that when alleged "'error violates [a] defendant's right to a trial by a jury of twelve, [a] defendant's failure to object is not fatal to his right to raise the question on appeal'" (quoting *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985))).

Defendant was charged with two counts of maintaining a dwelling to keep or sell a controlled substance in violation of N.C. Gen. Stat. § 90-108(a)(7) (2013). The trial court initially charged the jury as to each of the two counts of maintaining a dwelling separately. With respect to the 24 February offense, the court instructed in relevant part: "The defendant has been charged with intentionally maintaining a building which was used for the purpose of unlawfully keeping or selling controlled substances on February 24th, 2011. For you to find the defendant guilty of this offense, the state must prove two things beyond a reasonable doubt. First, that the defendant kept a building which was used for the purpose of unlawfully keeping or selling cocaine or hydrocodone."

With respect to the 21 July offense, the court instructed: "The defendant has been charged with intentionally maintaining a building used for the purpose of unlawfully keeping or selling controlled substances on July 21, 2011. For you to find the defendant guilty of this offense, the state must prove two things beyond a reasonable doubt. First, that the defendant kept a building which was used for the purpose of unlawfully keeping or selling cocaine, a controlled -- cocaine, period." The two instructions were, therefore, identical in relevant part except that the 24 February instruction referenced both cocaine and hydrocodone, while the 21 July instruction referenced only cocaine. Defendant does not challenge the initial instructions for the maintaining a dwelling charges.

The trial court also initially charged the jury with the lesser-included offense of misdemeanor maintaining a dwelling, which differs from the felony offense in that the felony requires that the defendant "intentionally" maintained the dwelling used for the unlawful purpose, and the misdemeanor requires only proof that the defendant "knowingly" maintained the dwelling used for the unlawful purpose. *See* N.C. Gen. Stat. § 90-108(a)(7), (b). During deliberations, the jury asked a question about intent versus knowledge with respect to the

felony maintaining a dwelling charges and the lesser-included offenses.

In its response to the jury, the trial court gave a single, reinstruction that applied to both offense dates. The court explained to the jury:

> The defendant has been charged with intentionally keeping a building used for the purpose of unlawfully keeping or selling controlled substances on February 24th, 2011, and also on July 21st, 2011. Two separate charges. For you to find the defendant guilty of this offense, the state must prove two things beyond a reasonable doubt. First, that the defendant kept a building which was used for the purpose of unlawfully *keeping or selling hydrocodone or cocaine. Hydrocodone and cocaine* are both controlled substances, the *keeping or selling* of which is unlawful.
>
> . . . .
>
> If you find from the evidence beyond a reasonable doubt that on or [sic] *February 24th, 2011, and/or July 21st, 2011*, that the defendant intentionally kept a building used for the unlawful *keeping or selling* of controlled substances, then it would be your duty to return a verdict of guilty of *this offense*.

(Emphasis added.)

Defendant argues that, based on the disjunctive reinstruction, the verdicts for the two maintaining a dwelling charges are fatally ambiguous since "jurors could have used different acts of keeping or selling cocaine, hydrocodone or

both on both, one or neither date of the charged offenses . . . ." Our Supreme Court has held that "a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." *State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991). However, "if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied." *Id.* at 303, 412 S.E.2d at 312.

"[T]he submission of instructions in the disjunctive will not always render a resulting verdict fatally ambiguous. In some cases, '[a]n examination of the verdict, the charge, the initial instructions by the trial judge to the jury . . ., and the evidence may remove any ambiguity created by the charge.'" *Id.* at 307, 412 S.E.2d at 315 (first alteration added) (quoting *State v. Diaz*, 317 N.C. 545, 554, 346 S.E.2d 488, 494 (1986) *abrogated in part on other grounds by State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990)).

In this case, the trial court's reinstruction, when read in isolation, arguably indicates that the jury could find defendant

guilty of a single count of maintaining a dwelling based on either of the two separate offense dates. However, the court initially separately instructed the jury for each of the two offenses and, in the reinstruction, the court reiterated that the two offense dates were for "[t]wo separate charges." In addition, there were two separate verdict sheets, one for each of the two maintaining a dwelling charges. On those sheets, the jury found defendant guilty of (1) "Felonious Maintain Building To Keep Illegal Controlled Substances on February 24th, 2011[,]" and (2) "Felonious Maintain Building To Keep Illegal Controlled Substances on July 21st 2011." Under these circumstances, there was no ambiguity in the jury's verdicts -- the jury unanimously found defendant guilty of one count of maintaining a dwelling for each of the two separate offense dates.

Although defendant also argues that the court erred in disjunctively reinstructing the jury that in order to find defendant guilty of the offenses, it must find that he kept a building that was used for the purpose of either "keeping" or "selling" controlled substances, defendant does not challenge on appeal the trial court's initial instructions on these charges that employed the same "keeping or selling" language. Given defendant's failure to challenge the initial instructions, the jury would have heard the "keeping or selling" phrasing in the

unchallenged initial instructions even if the court had not given the challenged reinstruction. Defendant cannot, therefore, show prejudice in the reinstruction on this point. *Cf. State v. Watkins*, 77 N.C. App. 325, 331, 335 S.E.2d 232, 236 (1985) (holding admission of challenged testimony did not prejudice defendant since same testimony had already been admitted without objection).

Defendant similarly challenges that the trial court's reinstruction for both offenses that, in order to convict defendant, the jury was required to find that he kept the building for the purpose of unlawfully keeping or selling either "hydrocodone or cocaine." While, with respect to the 24 February charge, the initial instruction was identical to the reinstruction and, therefore, cannot have been prejudicial, the reinstruction as to the 21 July charge differed from the initial instruction. The initial instruction, in accordance with the indictment for that charge, referred only to cocaine, while the reinstruction referred to both hydrocodone and cocaine.[2]

Thus, under *Lyons*, defendant's argument presents the issue whether maintaining a dwelling used for the purpose of

---

[2]We note that defendant does not argue that there is a variance between the indictment for the 21 July charge and the reinstruction, and he does not argue that the reinstruction is unsupported by the evidence. He solely argues that it is impossible to tell whether the jury unanimously reached its verdicts for the two maintaining a dwelling charges.

unlawfully keeping or selling "cocaine" and maintaining a dwelling used for the purpose of unlawfully keeping or selling "hydrocodone" are two acts giving rise to separate offenses, or are merely two "various alternative acts *which will establish an element of the offense*" of maintaining a dwelling in violation of N.C. Gen. Stat. § 90-108(a)(7). *Lyons*, 330 N.C. at 303, 412 S.E.2d at 312.

N.C. Gen. Stat. § 90-108(a)(7) provides: "It shall be unlawful for any person . . . [t]o knowingly keep or maintain any . . . dwelling . . . which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article[.]" Based on this statutory language, our Supreme Court has held that "[t]here are thus two theories under which the State may prosecute a defendant under N.C.G.S. § 90-108(a)(7). Under the first statutory alternative the State must prove that the defendant did (1) knowingly (2) keep or maintain (3) a [dwelling] (4) which is resorted to (5) by persons unlawfully using controlled substances (6) for the purpose of using controlled substances. *Under the second statutory alternative, the State must prove that the defendant did (1) knowingly (2) keep or maintain (3) a [dwelling] (4) which is used for the*

*keeping or selling (5) of controlled substances*." *State v. Mitchell*, 336 N.C. 22, 31, 442 S.E.2d 24, 29 (1994) (emphasis added). The State proceeded under the second statutory alternative in this case.

Thus, the statutory language of N.C. Gen. Stat. § 90-108(a)(7) does not require proof of any one particular controlled substance versus another, and our Supreme Court in *Mitchell*, 336 N.C. at 31, 442 S.E.2d at 29, referred generally to "controlled substances" in describing the elements of a violation of N.C. Gen. Stat. § 90-108(a)(7). The level of punishment for the offense is not determined by the identity of the controlled substance, and we see no indication that the identity of the controlled substance otherwise impacts the nature of the offense.

In *State v. Brady*, 147 N.C. App. 755, 759, 557 S.E.2d 148, 151 (2001) (quoting N.C. Gen. Stat. § 90-108(a)(10) (1999)), this Court considered a statute that provided "it shall be unlawful for any person '[t]o acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge[.]'" In holding that the trial court did not err in allowing the State to amend the indictment to change the name of the controlled substance from "'Xanax,'" a Schedule IV controlled substance, to "'Percocet,'" a Schedule II

controlled substance, *id.* at 759, 557 S.E.2d at 151, this Court first noted that a "'non-essential variance is not fatal to the charged offense,' and any 'averment unnecessary to charge the offense . . . may be disregarded as inconsequential surplusage.'" *Id.* at 758, 557 S.E.2d at 151 (quoting *State v. Grady*, 136 N.C. App. 394, 396-97, 524 S.E.2d 75, 77 (2000)). The Court then held that the amendment did not substantially alter the indictment since (1) "[t]he name of the controlled substance was not necessary to charge Defendant with a crime under section 90-108(a)(10), as the charge remained the same whether the controlled substance was a Schedule II or a Schedule IV drug[,]" and (2) the defendant "was neither misled nor surprised by the subsequent change in the Indictment as the State was required to prove the same elements." *Id.* at 759, 557 S.E.2d at 151.

We believe the reasoning in *Brady* applies with equal force in this context. Because the identity of the controlled substance was not essential to the charged offense, we hold that the trial court's disjunctive reinstruction that the jury could find defendant guilty, with respect to the 21 July charge, if it found he kept a building that was used for the purpose of unlawfully keeping or selling either "hydrocodone or cocaine" did not violate defendant's right to a unanimous jury verdict.

Rather, the evidence of two possible controlled substances that might fulfill the element that the building was used to keep or sell "controlled substances" presented the jury with "various alternative acts *which will establish an element of the offense*." *Lyons*, 330 N.C. at 303, 412 S.E.2d at 312. *Cf. Mitchell*, 336 N.C. at 34, 442 S.E.2d at 30 (analyzing sufficiency of the evidence argument for charge of maintaining vehicle to keep or sell marijuana and explaining that "focus of the inquiry is on the *use*, not the contents, of the vehicle"). Consequently, we conclude defendant has failed to show prejudicial error with respect to the disjunctive reinstruction.

No error.

Judges BRYANT and CALABRIA concur.

Report per Rule 30(e).